[Civ. No. 6983.   Third Dist.   Feb. 7, 1945.]

CALIFORNIA EMPLOYMENT COMMISSION, Appellant,
v. JOHN ROSE, Respondent.

Robert. W. Kenny, Attorney General, Clarence A. Linn, Deputy Attorney General, Forrest M. Hill, Ralph R. Planteen and Doris H. Maier for Appellant.

Lawrence J. Skirving for Respondent.

THOMPSON, J.—California Employment Commission has appealed from a judgment which was rendered against it in a suit instituted under section 37 of the Unemployment Insurance Act of California (Stats. 1935, p. 1226, as amended; Deering's Gen. Laws, 1939, p. 1697, Act 8780d) to collect from the respondent, who was engaged in baling hay on contract with farmers in Yolo County, alleged delinquent assessments levied under that act. Section 7(a) of the act specifically exempts from its provisions "agricultural labor." The appellant contends that baling hay by an independent contractor, for a farmer who produces the crop, does not constitute agricultural labor, and that pursuant to section 90 of the act the commission adopted rule 7.1, which defines "agricultural labor," excluding therefrom all services "unless they are *performed by an employee of the owner or tenant of the farm* on which the materials in their raw or natural state were produced."

The facts are not disputed. During the period of time which is involved in this suit, the respondent John Rose was engaged in the business of baling hay on contract for farmers who produced crops in Yolo County. He owned and operated his own hay baling equipment, and employed and paid eight men who performed the labor for him. He had the exclusive right to hire or fire these workmen. They were not necessarily farmers. The farmers who produced the hay paid to the contractor a stipulated amount per ton for the baling. The respondent's employees were paid by him an agreed sum

per ton for their services. Sometimes the hay was baled on the farms where it was produced, but to save cost and inconvenience of moving the hay baling equipment, the hay was usually hauled to a location near the ranch, where it was baled.

The rule upon which the appellant relies became effective February 14, 1937. It reads in part:

"Rule 7.1. AGRICULTURAL LABOR DEFINED. — The term 'Agricultural Labor' includes all services performed:

"(1) By an employee on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops; the raising, feeding, management of livestock, poultry and bees; which includes, among others, the spraying, pruning, fumigating, fertilizing, irrigating, and heating which may be necessary and incident thereto;

"(2) By an employee in connection with the drying, processing, packing, packaging, transportation, and marketing of materials which are produced on the farm or articles produced from such materials, providing such drying, processing, packing, packaging, transporting, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"The services hereinabove set forth *do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced.* Such services, however, do not constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations.

"As used herein the term 'farm' includes, among others, stock, dairy, poultry, fruit and truck farms, plantations, ranches, ranges, orchards and vineyards." (Italics ours.)

The court adopted findings to the effect that the work performed by the employees of John Rose in baling hay constitutes "agricultural labor" which is exempted by the provisions of section 7(a) of the Unemployment Insurance Act, whether the hay was baled upon or off of the farms where it was produced, and that said contractor is therefore not liable for payments of contributions for his workmen to the unemployment fund under section 37 of said act, or at all. Judgment was accordingly rendered in favor of John Rose. From that judgment this appeal was perfected.

The commission contends that John Rose is not exempted from paying contributions for his workmen to the

unemployment fund provided for by the act for the reason that they were not engaged in "agricultural labor," as that term is defined by the foregoing quoted rule, since they were not employed by the owners or tenants of the farms on which the hay was produced, and because they were engaged in a separate business of baling hay by an independent contractor. On the contrary the respondent asserts that the rule contains an unwarranted and invalid restriction of the term "agricultural labor," and that his employees were clearly engaged in work of an agricultural nature and therefore exempt from the provisions of the Unemployment Insurance Act.

The identical rule which is involved in this case has been approved by our Supreme Court as a valid exercise of the power of the California Employment Commission.

In the recent case of *California Employment Commission* v. *Butte County Rice Growers Association*, 25 Cal.2d 624 [154 P.2d 892], the Supreme Court approved the previously quoted rule 7.1 of the California Employment Commission as a proper definition of the term "Agricultural Labor." That rule was adopted pursuant to section 90 of the act. By the approval of that rule the decision in that case determines that employees are not exempt from payment of contributions to the unemployment fund, as "agricultural laborers," even though they may be engaged in work of an agricultural nature, unless the services "are performed *by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced.*" In upholding the validity of rule 7.1 the Supreme Court of California said in the case last cited that:

"Where the Legislature has by its enactments declared policies and fixed primary standards, as it did in the Unemployment Insurance Act, there can be no question but what it may validly confer on administrative officers power to 'fill up the details' by prescribing rules and regulations to promote the spirit and purpose of the legislation and its complete operation. In its general form of distinction, rule 7.1 appears to be a practical, workable definition in amplification of the unexpanded statutory exemption here presented. Practically all of the courts that have been required to pass upon regulations identical with or very similar to rule 7.1 have upheld the same as proper interpretations of the statutes involved." (Citing numerous authorities.)

The court further says, in the last case from which we have quoted, that the definition of agricultural labor contained in rule 7.1 is significant of the legislative intent since the California Unemployment Insurance Act was enacted "as a part of a National plan of unemployment reserves and social security" (§ 2, Unemployment Reserves Act, Deering's Gen. Laws, 1937, p. 4122, Act 8780d), and is in accordance with the federal construction of the term "agricultural labor."

The Supreme Court of Arizona has also construed the same language contained in a rule adopted by the Employment Security Commission of that state requiring the owners or tenants of the farms upon which the crops are produced to be the employers of workmen in order to exempt them from the provisions of an unemployment compensation act which excludes "agricultural labor" from its terms. In the case of *Employment Security Commission* v. *Arizona Citrus Growers,* —— Ariz. —— [144 P.2d 682], it was held that employees of a cooperative marketing association engaged in grading, cleaning, wrapping and boxing citrus fruits for market were not agricultural laborers, because they were not employed by the owners or tenants of the farms upon which the fruits were produced. On page 687 [144 P.2d] of the opinion last cited the court said regarding the construction of the language of that rule:

"Rule I, subdivision 2, provides that labor such as that performed by the claimants herein 'does not constitute agricultural labor unless it is performed *by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced.*' Applying this standard to the facts as hereinbefore set forth, it is evident that the services in the present case were not performed by an employee of the 'owner or tenant'."

It follows that the services performed, regardless of their nature, even though they consist of work on a hay baling press operated upon or off of the farm where the hay is produced, do not constitute "agricultural labor" under the California Unemployment Insurance Act unless the workmen are employees of the owner or tenant of the farm upon which the materials are produced.

The only remaining question to be determined on this appeal is whether the workmen engaged by John Rose on his hay baling equipment were "employees of the owner or tenant of the farm on which the materials . . . were pro-

duced.'' If they were not employees of the owners or tenants of the farms upon which the hay was produced, they may not be deemed to be exempt from payment of contributions to the unemployment fund. The undisputed facts of this case clearly show that the workmen were not employed or under the direction or control of the owners or tenants of the farms. They are therefore not exempt. While it is true that John Rose was engaged in the industry of baling hay, which business is agricultural in character (*Goldberg* v. *Miller,* 54 Wyo. 485 [93 P.2d 947, 96 P.2d 570]), and that it is ordinarily desirable to bale the hay for marketing purpose, Rose's hay baling enterprise was entirely separate and distinct from the farmers' cultivation of the soil and their planting and harvesting of the crops. He conducted his business independently of the farmers for his own individual profit. He owned the hay baling outfit and operated it at his own expense. He hired the workmen and paid them for their services. He merely contracted with the farmers to bale their hay for a stipulated price per ton. He was carrying on an independent business for financial profit. The owners of the farms upon which the hay was produced neither hired the hay balers nor paid their wages. The farmers had no authority to direct their work. Therefore the workmen may not be deemed to come within the exclusion term of ''agricultural labor'' as it is used in the Unemployment Insurance Act, and they are not exempt from payment of contributions to the unemployment fund.

It is true that it has been held in industrial accident cases, based on the exclusion from such statutes of persons employed in agricultural labor (Lab. Code, § 3352), that employees who were injured while working on hay baling presses, *owned and operated by farmers* engaged in baling hay on contract, either upon or off of the farms on which the crops were produced, are not entitled to recover damages under the Workmen's Compensation Act, because they were deemed to be engaged in labor of an agricultural nature. (*Morris* v. *Spears,* 1 Dec. of Ind. Acc. Com., p. 317; *Vincent* v. *Louis,* 2 Dec. of Ind. Acc. Com., p. 168; *Neimeyer* v. *Volger,* 2 Dec. of Ind. Acc. Com., p. 335; *In re Roby,* 54 Wyo. 439 [93 P.2d 940].) But no rule of the commission defining ''agricultural labor,'' such as is involved in this action, was involved or considered in those proceedings. Likewise, it was held in *Cook* v. *Massey,* 38 Idaho 264 [220 P. 1088, 35 A.L.R. 200], under sim-

ilar circumstances, that a workman who was injured while employed on a steam threshing machine was not entitled to damages under a Workmen's Compensation Act, on the theory that he was engaged in work of an agricultural nature. The authorities in various jurisdictions are conflicting with respect to the conditions which may bring occupations incident to farming, such as threshing, hay baling and other pursuits designed to aid in the preparation of agricultural products for market, within the term "agricultural labor." (*In re Roby, supra; Mundell* v. *Swedlund,* 59 Idaho 29 [80 P.2d 13]; *Cook* v. *Massey, supra;* 107 A.L.R. 977, note; 139 A.L.R. 1164, note; 146 A.L.R. 1318, note.)

General definitions of agricultural labor contained in numerous authorities are, however, of slight assistance in determining whether the workmen hired by the appellant in this case were exempt from payment of contributions to the unemployment fund in view of the language contained in rule 7.1, which is approved by our Supreme Court. It not only held that the rule was a valid exercise of authority by the California Employment Commission, but also that warehouse workmen hired by the farmers cooperative association to process and prepare for market the produce of its members were not engaged in agricultural labor so as to exempt them from contributing to the unemployment fund. In the Butte County Rice Growers' Association case, quoting with approval from *Pinnacle Packing Co.* v. *State Unemployment Commission,* an unreported decision of the Circuit Court of Jackson County, Oregon, our Supreme Court said:

"The fruit growers who are engaged in the care, cultivation, picking, and delivery of the products of the orchard to be processed, graded, packed and marketed are engaged in agricultural labor and are exempt from the provisions of the statute. As soon as the fruit is delivered by the growers to the plaintiff for processing, grading, packing, and marketing, *then the exemption ceases. The plaintiffs engaged in processing, grading, and packing and marketing the fruits are engaged in industry and are, therefore, subject to the provisions of the act and are not exempt as being engaged in agricultural labor.*" (Italics added.)

In the Butte County Rice Growers' Association case, the Supreme Court concludes that the workmen engaged in the cooperative association warehouse were not exempt from payment of unemployment contributions. The court said:

"Concededly, the services performed by the defendant's employees are *not* 'on a farm' and so do not meet the specification of subdivision (1) of said rule. Equally exclusive is the plain language of subdivision (2), for it requires that services rendered 'in connection with the drying, processing, packing, packaging, transportation, and marketing of materials which are produced on the farm' be *'incident to ordinary farming operations as distinguished from manufacturing or commercial operations'* and be *'performed by an employee of the owner or tenant of the farm.'* (Italics ours.) Thus, to come within the 'agricultural labor' exemption, *off the farm* services must be an integral part of farming operations performed for the farmer as such—*not for a third person* separate and apart from such fundamental concept. Regardless of any argument as to the commercial nature of the defendant association's enterprise, it admittedly is not the owner, tenant or operator of any farm land. . . .

"It therefore follows that the defendant association may not claim the exemption sought but is liable for 'contributions' computed on the wages paid to its employees as provided by the statute."

On the authority of the foregoing case, and for the reasons previously stated, we conclude that rule 7.1 is a valid delegation of authority for the adoption of the definition of the term "agricultural labor" contained therein, and that the defendant John Rose is not exempt under the California Unemployment Insurance Act from payment of unemployment contributions as therein provided for the reasons that he performed the services of baling hay as an independent business separate and distinct from the production of the crops by the farmers, and that his workmen were not employees of the farmers.

The judgment is reversed and the trial court is directed to render judgment for the plaintiff for the sums ascertained to be due the commission as contributions to the unemployment fund as provided by the statute.

Adams, P. J., and Schottky, J. pro tem., concurred.