[Civ. No. 7556. Third Dist. Mar. 11, 1949.]

THE PEOPLE, Appellant, v. J. V. GIESBRECHT et al., Respondents.

Fred N. Howser, Attorney General, William L. Shaw and Charles W. Johnson, Deputy Attorneys General, for Appellant.

L. A. Macnicol for Respondents.

THOMPSON, J.—This is an appeal by the People of the State of California (successor to California Employment Stabilization Commission, successor to California Employment Commission) from an adverse judgment rendered in a suit to collect unpaid contributions due from workmen employed in a hay-baling enterprise under section 45 of the Unemployment Insurance Act of California. (Stats. 1935, ch. 352, p. 1226, as amended; 3 Deering's Gen. Laws, Act 8780d.) The trial court determined that ''The services performed by the defendants' employees in baling hay constituted agricultural labor, and therefore, are excluded from the provisions of the Unemployment Insurance Act of the State of California.'' Judgment was rendered accordingly that plaintiff take nothing by the action.

The evidence shows without conflict that the defendants, J. V. Giesbrecht and his two sons, were engaged in the enterprise of baling hay, on contract, for various farmers in Merced County during the years from 1938 to 1941, inclusive. They were not employees of any of said farmers. They owned and operated two or three hay-baling outfits. They hired two crews, consisting of five men in each crew. The workmen were paid by the defendants a stipulated sum per ton. The defendants were paid a stipulated contract price per ton for baling the hay. The defendant Frank Giesbrecht testified regarding the basis upon which they conducted their hay-baling operations, and hired their workmen, as follows:

''Q. Now did you hire men as employees in connection with your hay-baling operations? A. Yes. . . . Q. And did you pay them wages? A. Paid them by the ton, it was on a tonnage basis, *it was all contract labor.*'' (Italics added.)

No contributions were paid by the defendants during the period of time which is involved in this suit, as required by the Unemployment Insurance Act.

The only question on this appeal is whether the finding of the trial court that the hay-baling services performed by the defendants constituted "agricultural labor" is supported by any competent evidence. In other words, we are required to determine whether, under the undisputed facts of this case, the services performed by the defendants in baling hay were exempt from contributions because they constituted "agricultural labor" under section 7 (a) of the Unemployment Insurance Act, or as defined by rule 7.1 adopted by the commission. The last-mentioned rule appears on page 4 of appellant's opening brief, and is discussed and relied upon by both parties.

Rule 7.1 defines "agricultural labor" which is exempt from the provisions of the act to include all services performed:

"(1) By an employee on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops; . . .

"(2) By an employee in connection with the drying, processing, packing, packaging, transporting and marketing of materials which are produced on the farm or articles produced from such materials, providing such drying, processing, packing, packaging, transporting, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or *commercial operations*.

"The services hereinbefore set forth do not constitute agricultural labor *unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Nor do such services constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations. . . .*" (Italics added.)

The preceding rule has been uniformly upheld as a valid delegation of authority and a practical definition of agricultural labor as that term is used in the act in question. (*California Employment Com.* v. *Butte County Rice Growers Assoc.*, 25 Cal.2d 624, 632 [154 P.2d 892] ; *California Employment Com.* v. *Rose*, 67 Cal.App.2d 864, 867 [155 P.2d 702] ; *California Employment Com.* v. *Kovacevich*, 27 Cal.2d 546 [165 P.2d 917].)

The respondents attempt to distinguish the application of the foregoing cases on the asserted ground that some of the work performed by their employees was performed by "cutting, raking and baling hay" on the farms where it was produced. However, there is no competent evidence in this case that the defendants cut or raked hay as a part of their hay-baling enterprise, or that any of defendants' workmen

were *employed by the owners or tenants of farm land* to cut or rake their hay. The only language upon which the respondents rely in support of their assertion that any portion of said services was performed by "cutting, raking and baling hay" appears in a statement of Mr. Piester, one of defendants' hay balers, made in a transcript of evidence of a preassessment hearing held in Merced November 25, 1941, which was offered in evidence by plaintiff for the sole purpose of showing "compliance by the plaintiff with the statutory administrative procedure of enforcing plaintiff's claim to unpaid contributions to the unemployment insurance fund. The offer was objected to by the defendants, but the objection was overruled and the record was received and marked Exhibit number 5. That record merely shows, on page 11, that the examiner inquired from Mr. Piester to determine how long he worked for the defendants as a hay baler, and if "he didn't work on Case No. 1?" to which he replied "No." He was then asked, "But what did you do?" to which he replied "I went—I run a little—had a little cut down model A tractor, . . . to pull a rake. And I was raking grained hay at that time." He was then asked, "And was it an operation which was necessary and concerned with this hay baling operation—part of it?" to which he replied "Yes." He was then asked, "In other words, getting hay ready for the press; is that it?" to which he answered, "Yes, all mowed and raked and put up and bagged." That is the only evidence in this record that any employee of the defendants cut or raked hay incident to the hay-baling operations or otherwise. That statement was not referred to in the evidence adduced at the trial. Neither party suggested at the trial that the cutting or raking of hay was a part of the hay-baling contract or enterprise. It definitely appears defendants hired their workmen and paid them a stipulated sum per ton. One of the defendants testified that they paid them "by the ton, it was on a tonnage basis, it was all contract labor." Even though that statement is deemed to be competent evidence that the cutting and raking of hay may have been a part of the enterprise of baling hay by contract, which we do not concede, still it clearly appears such workmen were not *employees of the owners or tenants of the land* upon which the hay was produced, and upon the contrary, that they performed that service solely as defendants' workmen as a part of their hay-bailing contract. In any event that statement of Piester regarding his incidental raking of hay is not determinative of this appeal. That circumstance

could not change the undisputed independent nature of the hay-baling enterprise. Even though one of defendants' workmen, on one occasion, performed some service in cutting or raking hay, which services may be exempt from the provisions of the Unemployment Insurance Act, it could not render the commercial enterprise of the defendants' baling of hay under contract wholly agricultural so as to exempt that industry from the provisions of the act. (*California Employment Com.* v. *Kovacevich, supra.*) The last cited authority distinguishes between services performed for the growers, under paragraph (1) of rule 7.1 "in connection with the cultivation of the soil, the raising and harvesting of crops," which are agricultural in nature, from "commercial operations" as provided by paragraph (2) of that rule. The former services are held to be agricultural labor which are exempt from the act, while the latter are held to be commercial in nature and therefore subject to the act. Quoting with approval from a case cited on page 557, the Supreme Court holds that "As soon as the fruit is delivered by the growers to the plaintiff for processing, grading, packing, and marketing, then the *exemption ceases.*" (Italics added.) Applying that rule to the present case, it follows that, as soon as the hay was cut, raked, harvested and delivered to these defendants for baling, under their contract, the exemption from the act ceased, and the subsequent hay-baling operations became subject to contributions under that act.

We are impelled to hold that the court erred in determining that defendants' hay-baling enterprise constitutes agricultural labor, and that it is therefore exempt from the provisions of the Unemployment Insurance Act. In the Rose case, *supra,* under almost exactly the same contracts and conditions which exist in this case, we definitely held that the baling of hay by contract, either on or off the farms where it was produced, constituted commercial operations which were subject to the act in question. That conclusion was approved by the Supreme Court in the Kovacevich case. It is true that the latter case disapproved certain quoted language in the Rose case. Commenting on the essential elements which led this court to decide that Rose was engaged in commercial operations of baling hay which subjected him to the payment of contributions under that act, the Supreme Court said at page 559:

". . . However, the actual decision in the Rose case is entirely in line with the views herein expressed. There the employer was engaged in the business of baling hay on contract for various farmers. Sometimes the hay was baled on

the farms where it was produced, but usually it was hauled to a central location nearby to save the cost and inconvenience of moving the hay-baling equipment. As so conducted, *such independent enterprise was distinct from the farmers' 'cultivation of the soil, the raising and harvesting of crops,' and the hay-baling labor would properly come within subdivision (2) of our rule as services 'in connection with the drying, processing, packing, packaging, . . . of materials which are produced on the farm.' Labor so identified would not be agricultural unless 'performed by an employee of the owner or tenant of the farm on which the materials . . . were produced.'*

''From these observations it is clear that hay baling is an admirable example of 'the nature of the work, modified by the custom of doing it,' affecting the category into which the work falls—agricultural or industrial.'' (Italics added.)

The Kovacevich case involved the ownership and operation of a fruit packing plant by the defendant. He owned no farm, orchard or vineyard. He contracted with fruit growers, to purchase their crops on the trees or vines for stipulated prices. He sometimes contracted to irrigate and prune the vines or trees, and to *girdle, thin and harvest the crops.* The fruit was then hauled to his plant where it was processed and packed for market. The trial court determined that the defendant, having purchased unmatured crops which he cultivated and harvested, was engaged in agricultural labor, regardless of his packing plant operations, and therefore rendered judgment for the defendant. That judgment was reversed on appeal. The trial court was directed to determine the amount of contributions due from ''that part of the services in question classified as 'packing house labor' and 'office help,' and to enter judgment for appellant accordingly.''

Upon the foregoing authorities we conclude that the defendants in this case are liable for contributions based on all services rendered in the hay-baling enterprise.

The judgment is reversed.

Adams, P. J., and Peek, J., concurred.