[Civ. No. 7866.   Third Dist.   Jan. 5, 1951.]

FRANK ENOS, Appellant, v. CALIFORNIA EMPLOY-MENT STABILIZATION COMMISSION et al., Respondents.

Norman A. Eisner and Charles A. Rummel for Appellant.

Fred N. Howser, Attorney General, Irving Perluss and William L. Shaw, Deputy Attorneys General, for Respondents.

STEEL, J. pro tem.—Plaintiff has appealed from a judgment rendered in the Superior Court of Sacramento County in favor of the defendant California Employment Stabilization Commission in an action for refund of certain contributions assessed and paid under protest. The action is based upon the theory that the services rendered were agricultural labor and exempt from contributions pursuant to the Unemployment Insurance Act (Deering's Gen. Laws, Act 8780d).

After finding that all preliminary statutory procedure had been duly followed and complied with, the trial court, so far as material here, found the following facts:

"That it is not true that the labor in which the employees of Enos were engaged in hay baling constituted agricultural labor.

"That it is not true that the baling of hay, as herein performed, is a part of the harvesting of hay and so constitutes agricultural labor.

"That it is not true that labor performed in connection with the baling of hay is, in its nature, and in truth and in effect, agricultural.

. . . . . . . . . . . . . .

"That it is not true that plaintiff, Enos, acted with good cause in believing that his labor, engaged in hay baling, is agricultural and exempt.

"That it is true that plaintiff is the owner of two hay baling machines, one of which was purchased in 1941 and the other in 1946. That each hay baling machine operates independently. That each machine has a capacity for baling between 65 and 70 tons of hay per day. That two tractors, two cook houses and other industrial equipment are owned by the plaintiff and used in his hay baling operations. That the plaintiff contracts with the farmer, who has grown the hay, to bale the hay at a stipulated price per ton. That subsequent to an agreement with the farmer, the plaintiff moves his men, machines and equipment to the farms upon which the hay is grown. That in all instances the plaintiff baled the hay upon the farm upon which it was grown. That in connection with the plaintiff's hay baling operations, excluding the cook, an eight man crew is normally employed on the baler. That the crew consists of a lever tender; a spool tender who operates the hoist to the baler; three feeders who push the hay into the baler; a wire poker; a bale piler and a roustabout. That approximately 60% of the hay grown in California is baled.

"That in farming operations, the harvesting of a crop, as generally understood and known by farmers, is a matter of cutting the hay, and if desired by the farmer, baling and storing on his farm; however, the harvesting of a crop, including the baling of hay, is not agricultural labor if done in the course of conducting an enterprise such as the plaintiff is here conducting."

From the foregoing findings the trial court determined that hay baling operations as performed by plaintiff are not exempt from contributions under the Unemployment Insurance Act, and are not agricultural labor under section 7(a) of the said act; that the hay baling as done by plaintiff was not harvesting within the meaning of section 43 of title 22 of the California Administrative Code.

Agricultural labor as defined by rule 7.1 adopted by the Unemployment Insurance Commission, prior to its replacement

June 1, 1945, by said section 43 of the Administrative Code, included all services performed:

"(1) By an employee on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops, the raising, feeding, management of livestock, poultry and bees; which includes, among others, the spraying, pruning, fumigating, fertilizing, irrigating, and heating which may be necessary and incident thereto;

"(2) By an employee in connection with the drying, processing, packing, packaging, transportation, and marketing of materials which are produced on the farm or articles produced from such materials, providing such drying, processing, packing, packaging, transporting, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Such services, however, do not constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations."

It is the contention of appellant that the hay baling operations in which he engaged herein are part of harvesting the crop and under section 43, *supra,* are agricultural labor and therefore exempt. Agricultural labor was defined by that regulation in part as follows:

"Agricultural labor exempted from 'employment' by Section 7(a) of the Act includes all services performed:

"(a) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting of any agricultural or horticultural commodity; the raising, feeding, and management of livestock, poultry and bees; which includes among others, the spraying, pruning, fumigating, fertilizing, irrigating and heating which may be necessary and incident thereto.

"(b) In the employ of the owner or tenant of a farm on which the materials in their raw or natural state were produced, in connection with the drying, processing, packing, packaging, transporting, and marketing of such materials."

During the trial, plaintiff called witnesses, in the nature of experts in the field of agriculture, who testified that hay baling according to custom and usage is considered to be a part of the harvesting of a crop, baling being one of the

methods used in gathering the crop. It was stipulated at the trial that 90 per cent of plaintiff's activities in hay baling were for other farmers and growers and 8 per cent of his total operation was confined to his own hay growing.

The sole issue presented upon this appeal therefore is whether or not the hay baling operations so conducted by plaintiff constituted "agricultural labor" within the contemplation of said section 7(a) of the Unemployment Act.

This court has had before it for consideration two cases, *California Employment Commission* v. *Rose,* 67 Cal.App.2d 864 [155 P.2d 702], and *People* v. *Giesbrecht,* 90 Cal.App.2d 569 [203 P.2d 101], which involved factual situations almost identical to that which exists in the instant case, and in each of the said cases it was held in substance that "contract hay baling is not agricultural labor."

It is the contention of the appellant that the Rose case, *supra,* wherein it is held that the services performed, regardless of their nature, do not constitute agricultural labor unless the workmen are employees of the owner or tenant on the farm upon which the materials are produced, has in that respect been disapproved by the Supreme Court in *California Employment Commission* v. *Kovacevich,* 27 Cal.2d 546 [165 P.2d 917]. He further contends that the hay baling in the Rose case, having been done both on and off the farm where it was grown, that case cannot be controlling in the instant one where all of the baling operations were performed upon the premises of the growers of the hay.

In the Kovacevich case, *supra,* the Supreme Court distinguished between services performed for farmers or growers under rule 7.1, paragraph (1) "in connection with the cultivation of the soil, the raising and harvesting of crops" which are agricultural by their very nature, from what may be termed "commercial operations" under paragraph (2) of the rule, and in discussing the Rose case stated as follows, at pages 559-560:

"Apparently out of line with such uniform construction is certain language in the recent opinion of *California Employment Commission* v. *Rose,* 67 Cal.App.2d 864 [155 P.2d 702] (hearing not requested before this court), purporting to follow the case of *California Employment Com.* v. *Butte County Rice Growers Assn., supra,* 25 Cal.2d 624 [154 P.2d 892], in stating at page 868 that 'the services performed, regardless of their nature, . . . do not constitute "agricultural labor"

. . . unless the workmen are employees of the owner or tenant of the farm. . . .' While, as aforestated, the Butte County Rice Growers case is concerned wholly with a warehouse enterprise and services in connection therewith falling wholly within subdivision (2) of rule 7.1, it is plain from the import of the quotation from the Butte County Rice Growers case, hereinbefore set forth, that 'on the farm' services in 'the cultivation of the soil, the raising and harvesting of crops,' as stated in subdivision (1) of the rule, always constitute 'agricultural labor' irrespective of the status of the employer, and that the latter factor incident to the owner-tenant limitation enters only into the classification of the services specified in subdivision (2). Accordingly, to the extent that language of the Rose case may carry implications contrary to the import of the Butte County Rice Growers opinion, or of the opinion herein, it is hereby disapproved. *However, the actual decision in the Rose case is entirely in line with the views herein expressed.* There the employer was engaged in the business of *baling hay on contract* for various farmers. Sometimes the hay was baled on the farms where it was produced, but usually it was hauled to a central location nearby to save the cost and inconvenience of moving the hay-baling equipment. *As so conducted, such independent enterprise was distinct from the farmers' 'cultivation of the soil, the raising and harvesting of crops,' and the hay-baling labor would properly come within the subdivision (2) of our rule as services 'in connection with the drying, processing, packing, packaging, . . . of materials which are produced on the farm.' Labor so identified would not be agricultural unless 'performed by an employee of the owner or tenant of the farm on which the materials . . . were produced.'*

''From these observations it is clear that hay baling is an admirable example of 'the nature of the work, modified by the custom of doing it,' affecting the category into which the work falls—agricultural or industrial. (See *H. Duys & Co.* v. *Tone,* 125 Conn. 300 [5 A.2d 23, 28].)'' (Italics added.)

This court in *People* v. *Giesbrecht, supra,* again held that hay baling operations engaged in by the defendant under contracts with various farmers who grew the hay did not constitute ''agricultural labor,'' under the act.

The question arises therefore whether the findings and judgment of the trial court herein are in harmony with the foregoing authorities.

In the Rose case, as heretofore mentioned, appellant urges that *there* the hay baling having been done both on the farm and off the farm is an important factor in considering this case in that *here* the baling operations were all performed on the farm where the hay was grown. We find no logic or merit in that contention. Clearly if baling is not harvesting when done at a location near the farm, it would appear to be rather difficult to conceive how, the same facts existing, the operations could become harvesting when moved to the farm. The *modus operandi* insofar as the actual hay baling operations are concerned would be identical. Appellant argues in this connection that the language of the Supreme Court in the Kovacevich case in referring to the Rose case and baling operations being performed on or off the farm wherein the court stated "as so conducted," should be interpreted to mean or apply only to the off farm operations, and therefore inapplicable to the instant case where the operations were performed upon the farm where the hay was grown. We cannot agree with that interpretation of what the court stated or implied, but rather are impelled to the conclusion that the court intended what it said, to wit: "However, the actual decision in the Rose case is entirely in line with the views herein expressed," and in effect that all of the hay baling activities of the defendant Rose, regardless of their location, were an independent enterprise distinct from the farmers' "cultivation of the soil, the raising and harvesting of crops," and properly comes within subdivision (2) of the rule as services "in connection with the drying, processing, packing, packaging," etc. Then follows the familiar quotation, "From these observations it is clear that hay baling is an admirable example of 'the nature of work, modified by the custom of doing it,' affecting the category into which the work falls—agricultural or industrial."

Appellant finally contends that this court in deciding the Giesbrecht case assumed that hay baling was not a part of the harvesting of the crop and therefore that case is not authority in support of the trial court's decision in the instant case. We are unable to follow appellant in this respect, but to the contrary we find nothing in the Giesbrecht case in material conflict with the decision of the trial court herein. To put it plainly, it would appear quite apparent that when a crop of hay is sown, grown, mown and raked in windrows or shocked, it has been harvested irrespective of whether it is thereafter stacked in the field, or hauled to the barn and stored

as loose hay, and the mere circumstance that on occasions the farmer may decide to engage some independent operator to come to his farm and bale the hay adds nothing to the harvest of the crop within the meaning of section 7(a). Such a baling operation the Kovacevich case has very properly held comes within subdivision (2) of rule 7.1—packing, packaging of materials which are produced on the farm.

Upon the law as established by the foregoing authorities as well as upon the facts herein involved, we conclude that the judgment of the trial court finds ample support.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 25, 1951, and appellant's petition for a hearing by the Supreme Court was denied March 5, 1951. Edmonds, J., Carter, J., and Schauer, J., voted for a hearing.