[Civ. No. 15254. First Dist., Div. Two. Sept. 30, 1952.]

LOUIS B. DIAS, Appellant, v. CALIFORNIA EMPLOY-
MENT STABILIZATION COMMISSION et al., Re-
spondents.

Norman A. Eisner and Haskell Titchell for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss
and William L. Shaw, Deputy Attorneys General, for Re-
spondents.

GOODELL, J.—This appeal is from a judgment for de-
fendants entered on their motion for judgment on the plead-
ings. Appellant filed an action to recover $2,062.20 paid under
the Unemployment Insurance Act (Stats. 1935, p. 1226 as
amended; 3 Deering's Gen. Laws, 1944, Act 8780d) cover-

ing the period from September 30, 1946 to September 30, 1949. Of this sum $1,229.71 represents employer contributions, $455.44 wage-earner contributions, and the remainder penalties and interest. Before making payment appellant exhausted his administrative remedies by petitioning for a reassessment, which was denied. His exceptions thereto were then disallowed. After payment, his claim for refund was denied. Such claim, then treated as a petition for review by the appeals board, was denied. This litigation followed.

In addition to the foregoing matters the complaint alleges:

"That said assessment, and the whole thereof, was illegally made and said claim for refund was illegally and erroneously denied, for the following reasons:

"1. Plaintiff is, and was during the period involved, engaged in the business of hay baling and the employees involved, and whose compensation constitutes the basis of the assessment, performed labor in connection with said hay baling operations. The hay was baled by plaintiff under contract for farmers, who produced the crops, and in all instances was performed upon the farm upon which the crop was grown.

"2. Agricultural labor is expressly exempted by Section 7 of said Act. The labor in which said employees were engaged was agricultural labor.

"3. Section 43, Title 22, California Administrative Code defines agricultural labor as including services performed in connection with raising or harvesting of any agricultural or horticultural commodity. The baling of the hay is a part of the harvesting of the hay, and constitutes agricultural labor as defined in said section.

"4. Labor performed in connection with the baling of hay is in its nature and in truth and in fact agricultural, and any regulation that would purport to exclude it from the benefits of the exemption contained in Section 7 (a) of the Unemployment Insurance Act would be unauthorized, in conflict with the statute, illegal and void.

"5. That plaintiff in good faith and upon reasonable grounds believed and still believes that labor engaged in hay baling is agricultural and exempt under said statute."

Shortly after the complaint was filed respondents, without filing either a demurrer or an answer, moved for judgment on the pleadings on the ground "that plaintiff's complaint does not state a cause of action in favor of the plaintiff but rather affirmatively indicates that the tax obligation upon which plaintiff has filed complaint upon claim for refund is

due to the defendants as a matter of law; that as grounds for this motion, this court may take notice that California law establishes that contract hay baling is nontax exempt under the Unemployment Insurance Act and that the plaintiff is tax subject and that hay baling is not a part of the harvesting of an agricultural commodity.''

In support of the motion respondents filed two affidavits introducing matters which went beyond the face of the complaint. Under settled rules this is not permissible and such extraneous matters cannot be considered either on the hearing or on appeal. As was recently said in *Stockton Morris Plan Co.* v. *Mariposa County*, 99 Cal.App.2d 210, 212 [221 P.2d 232], "the sole question is whether or not the complaint stated a cause of action. As the Supreme Court said in *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 151 [157 P.2d 1] : 'In considering whether the judgment on the pleadings was properly granted, it is but necessary to determine the sufficiency of the complaint upon the same principle as though it had been attacked by general demurrer. In other words, it is only where there is an entire absence of some essential allegation that a motion for judgment on the pleadings may be properly granted.' See, also, *Bates* v. *Escondido Union High School Dist.*, 133 Cal.App. 725, 727 [24 P.2d 884], in which the court, after stating the foregoing principle, said: 'This court cannot consider anything outside of the complaint itself. . . .' ''

We have given no consideration whatever to the affidavits or to any stipulations which might have been entered into.

The allegations of paragraph 1 just quoted are all allegations of fact. They show that plaintiff is not a farmer but a contractor engaged in the business of baling hay for others, under contract.

The allegation of paragraph 2 that "Agricultural labor is expressly exempted by Section 7 of said Act" is true. That section provides that "The term 'employment' does not include: (a) Agricultural labor; . . ." The next allegation of paragraph 2 that "The labor in which said employees were engaged was agricultural labor" is claimed by appellant to be an allegation of fact, but it is simply a statement of appellant's principal contention in this case. It is part of his contention, elaborated in paragraph 3, that "The baling of the hay is a part of the harvesting of the hay, and constitutes agricultural labor" as defined in section 43 of the California Administrative Code.

■ Section 43 went into effect on June 1, 1945, and was in effect during the three-year period in question. It provided that "Agricultural labor exempted from 'employment' by Section 7(a) of the act includes all services performed:

"a. On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting of any agricultural or horticultural commodity; . . .

"b. In the employ of the owner or tenant of a farm on which the materials in their raw or natural state were produced, in connection with the drying, processing, packing, packaging, transporting, and marketing of such materials.

"c. In the employ of the owner or tenant of a farm with respect to ordinary farming operations in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, if substantially all of such services are performed on a farm.

"d. The provisions of subsections (b) and (c) are not applicable with respect to the services referred to unless such services are carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations. Nor are the provisions of said subsections applicable to services performed in commercial canning or commercial freezing . . ."

Section 90 of the act empowered the commission to adopt rules, and it promulgated rule 7.1 effective February 14, 1937, which remained in effect until June 1, 1945, when section 43 was adopted to replace it. Rule 7.1 is set forth in the footnote.*

The Supreme Court in *California Emp. Com. v. Butte County Rice Growers Assn.* (1944), 25 Cal.2d 624 [154 P.2d 892], examined rule 7.1 and said (p. 632):

"Considering at the outset the challenge of the validity of rule 7.1, the objection is not well taken. Where the Legislature has by its enactments declared policies and fixed primary standards, as it did in the Unemployment Insurance

---

*"Rule 7.1. Agricultural Labor Defined.—The term 'Agricultural Labor' includes all services performed:

"(1) By an employee on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops; the raising, feeding, management of livestock, poultry and bees; which includes, among other others, the spraying, pruning, fumigating, fertilizing, irrigating, and heating which may be necessary and incident thereto;

"(2) By an employee in connection with the drying, processing, packing, packaging, transportation, and marketing of materials which are produced on the farm or articles produced from such materials, providing such drying, processing, packing, packaging, transporting, or

Act, there can be no question but that it may validly confer on administrative officers power to 'fill up the details' by prescribing rules and regulations to promote the spirit and purpose of the legislation and its complete operation. In its general form of distinction, rule 7.1 appears to be a practical, workable definition in amplification of the unexpanded statutory exemption here presented. Practically all of the courts that have been required to pass upon regulations identical with or very similar to rule 7.1 have upheld the same as proper interpretations of the statutes involved. (Citations.) In view of the harmony of judicial decisions on the point, it is unnecessary to discuss the matter further.''

There is no essential difference between rule 7.1 and section 43 as far as the present problem is concerned. The former was the parent of the latter and both provisions define agricultural labor. Subsection (1) of rule 7.1 dealt with services performed in the cultivation of the soil and the raising and harvesting of crops; paragraph ''a'' of section 43 does likewise. Subsection (2) of rule 7.1 dealt with services *subsequent* to the harvesting of crops and provides that such services do not constitute ''agricultural labor'' unless ''performed by an employee of the owner or tenant of the farm''; paragraph ''b'' of section 43 does likewise.

Subsection (1) of rule 7.1 dealing with services constituting agricultural labor opened with the words ''By an employee on a farm.'' Paragraph ''a'' of section 43 opens with the words ''On a farm, in the employ of any person.'' The second paragraph of subsection (2) of rule 7.1 provided that ''The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials . . . were produced.'' Paragraph ''b'' of section 43 opens with the words ''In the employ of the owner or tenant of a farm on which the materials . . . were produced.'' Thus these owner-tenant limitations are not found in subsection (1) of rule 7.1 or in paragraph ''a'' of section 43, but are found in subsection (2) of rule 7.1 and in paragraph ''b'' of section 43. In other

---

marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

''The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Such services, however, do not constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations . . .''

words the framers of both rule 7.1 and section 43 drew a sharp line in these respective sets of provisions.

In the Butte County case, *supra,* which approved rule 7.1, the court (25 Cal.2d 631) says: ". . . the principal reason for exempting 'agricultural labor' from social and industrial benefits resulting from remedial legislation has been administrative difficulties and accounting inconveniences in farm work (*Carmichael* v. *Southern Coal & C. Co.,* 301 U.S. 495 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327]) . . ." And further, (at page 639) the court speaks of ". . . the practical reason motivating the exemption in question—not a paramount purpose to benefit and encourage agriculture as such, but the avoidance of administrative difficulties in ascertaining and collecting the tax, involving expense disproportionate to the resulting advantage . . ." In the Carmichael case, *supra,* the court speaking through Mr. Justice Stone (301 U.S. 513) said: "Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, *farmers,* and family businesses, *not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax."* (Emphasis added.) The framers of rule 7.1 and its successor, section 43, unquestionably drew the lines in the respective provisions with these practical reasons in mind. The employees of an owner or tenant farmer come squarely within the reason for the rule; moreover, *any person* engaged in services embraced by subsection (1) of rule 7.1 or paragraph "a" of section 43 comes within it. But a person engaged in services embraced within subsection (2) of rule 7.1 or paragraph "b" of section 43 who is not an employee of the owner or tenant farmer is not within the reason for the rule since he is employed by an outsider in a commercial enterprise *wherein there is no excuse for not keeping adequate employment records.*

The question presented in this case has been before the courts on three appeals and has been decided the same way in all of them. Counsel for appellant are thoroughly familiar with all these earlier cases. All three were decided under rule 7.1. The first case was *California Emp. Com.* v. *Rose* (1945), 67 Cal.App.2d 864 [155 P.2d 702]; the second, *People* v. *Giesbrecht* (1949), 90 Cal.App.2d 569 [203 P.2d 101], and the third, *Enos* v. *California Emp. Stab. Com.* (1951), 101 Cal.App.2d 606 [225 P.2d 641]. On each appeal the decision went against the contractor who claimed to be within the

"agricultural labor" exemption; in each case the contractor was engaged in the independent business of baling hay under contracts with farmers who had produced the hay, and in each the contractor baled the hay with apparatus owned by him and operated by balers employed and paid by him.

The facts in *California Emp. Com.* v. *Rose, supra,* are identical with the facts in the instant case except that there some of the hay was baled on the farm whereon it was grown, and some elsewhere, while here it is alleged that *all* the hay was baled on the farms whereon it was grown. This makes no difference since no matter *where* the baling is done, the controlling feature is the provision of subdivision "b" of section 43 that there is no exemption unless the work is done by those "In the employ of the owner or tenant of a farm on which the materials . . . were produced." Without prolonging the discussion it is sufficient to say that except for the names of the parties, everything said in the Rose case in the paragraph commencing with [2] on page 868 and ending on page 869 exactly fits this case.

The Giesbrecht and Enos cases followed the Rose case.

In the case of *California Emp. Com.* v. *Kovacevich,* 27 Cal. 2d 546, 559 [165 P.2d 917], the Supreme Court criticized some of the language in the Rose case. The Butte County case, 25 Cal.2d 624, *supra,* wherein rule 7.1 was approved, was decided shortly before the Rose case and the court in the latter case (p. 868) in discussing the Butte County case used this language: "the services performed, *regardless of their nature* . . . do not constitute 'agricultural labor' . . . unless the workmen are employees of the owner or tenant of the farm. . . ." (Emphasis added.) It must be borne in mind that both the Butte County case and the Rose case dealt (*as the present case deals*) only with the handling of farm products *after* their severance from the land, while the Kovacevich case dealt with services performed by Kovacevich (a) while the fruit was on the branch as well as (b) after its severance or harvesting. The Supreme Court in the Kovacevich case found the language of the Rose case too broad since it might be taken to mean that services in the cultivation of the soil and before the severance and harvesting of the crops were subject to the owner-tenant limitation whereas that limitation applied only to services after harvest (see par. (2) rule 7.1 and par. "b" section 43, *supra*). The court said: "Accordingly, to the extent that language of the Rose case may carry implications contrary to the import of the Butte County Rice

Growers opinion, or of the opinion herein, it is hereby disapproved.'' But the court then went on to say: ''However, the actual decision in the Rose case is entirely in line with the views herein expressed. There the employer was engaged in the business of baling hay on contract for various farmers. Sometimes the hay was baled on the farms where it was produced, but usually it was hauled to a central location nearby to save the cost and inconvenience of moving the hay-baling equipment. As so conducted, *such independent enterprise was distinct from the farmers' 'cultivation of the soil, the raising and harvesting of crops,' and the hay-baling labor would properly come within subdivision (2) of our rule* as services 'in connection with the drying, processing, packing, packaging, . . . of materials which are produced on the farm.' *Labor so identified would not be agricultural unless 'performed by an employee of the owner or tenant of the farm on which the materials . . . were produced.'* From these observations it is clear that hay baling is an admirable example of 'the nature of the work, modified by the custom of doing it,' affecting the category into which the work falls—agricultural or industrial. (See *H. Duys & Co.* v. *Tone,* 125 Conn. 300 [5 A.2d 23, 28].) . . .'' (Emphasis added.)

Having thus made it clear that hay-baling by independent contractors and their employees was within the owner-tenant limitation of subsection (2) of rule 7.1, the court proceeded to show how and why Kovacevich's services in ''girdling'' and ''thinning'' the grapes while on the vine, and in picking them, were squarely within the exemption, while that part of his services performed *after* the severance or harvesting was not. The ultimate decision of the case demonstrates this sharp line of distinction.

. Appellant argues that since that case involved only grapes and other fruit the court's remarks respecting the Rose case involving hay are merely dicta. It is true that the Kovacevich case had nothing to do with hay-baling, but surely when the Supreme Court takes pains to define precisely what a lower court has held, and puts its seal of approval thereon, and in doing so says in so many words that hay-baling under contract is *an independent enterprise distinct from the harvesting of crops,* this court cannot very well hold that, as appellant contends, ''The baling of the hay is a part of the harvesting of the hay, and constitutes agricultural labor.'' In view of the provisions of section 43 (substantially the same as rule 7.1 interpreted by the Kovacevich case) we must hold that the

question whether hay-baling (under contract with the farmers who grew the hay) is part of the process of harvesting, is a question of law declared and settled by section 43, and not a question of fact as contended by appellant.

Appellant draws attention to the ruling of the Internal Revenue Department that ''Services performed on a farm in the employ of any person in connection with the baling of hay from the field or stack constitute 'agricultural labor' . . .'' and argues that it should be followed. It is within the province of the California Commission to amend section 43 in the interest of uniformity so as to conform to the federal ruling if it deems that desirable, but the fact remains that during the three-year period involved herein that section, drawn by the California Commission, read as quoted earlier. With that rule (or its predecessor) validated by the Supreme Court in the Butte County case, interpreted in the Kovace- vich case, and applied by the appellate court in the Rose, Giesbrecht and Enos cases, this court cannot now very well reach out beyond our own state boundaries.

For the same reason authorities from sister states need not be discussed herein.

Appellant also draws attention to three early decisions of the Industrial Accident Commission involving contract hay- baling. All three cases arose in 1914 at which time agricul- tural labor was totally exempted from the operation of the Workmen's Compensation Act and the commission held con- tract hay-baling to be agricultural labor and exempt. In the first place, there does not appear to have been any definition of agricultural labor by rule, as there is here. Secondly, the commission's orders were not opinions of a court of justice. Thirdly, there is in the present case a rule which has been interpreted by the Supreme Court and applied in three appel- late court decisions as we have already seen.

The law seems to be definitely settled in this state and we can only conclude that the motion for judgment on the plead- ings was properly granted.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 30, 1952, and appellant's petition for a hearing by the Supreme Court was denied November 25, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.