[Sac. No. 6748.    In Bank.    Apr. 8, 1958.]

WOODS IRRIGATION COMPANY (a Nonprofit Corporation), Respondent, v. THE DEPARTMENT OF EMPLOYMENT OF THE STATE OF CALIFORNIA et al., Appellants.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and William L. Shaw, Deputy Attorney General, for Appellants.

Jones, Lane, Weaver & Daley and Neal W. McCrory for Respondent.

SPENCE, J.—Plaintiff sought to recover certain unemployment insurance contributions assessed and paid under protest pursuant to the Unemployment Insurance Act. (Stats. 1935, ch. 352, p. 1226, as amended; Deering's Gen. Laws, 1937, Act 8780d.) The assessments covered the period from January 1, 1946, through June 30, 1951. Plaintiff pursued all prescribed administrative remedies before bringing this action. Its claim of refund is based upon the ground that the irrigating and drainage services performed by its employees constitute "agricultural labor" and so are exempt from the coverage of the act. The court signed findings of fact and conclusions of law sustaining plaintiff's claims; and defendants appeal from the ensuing judgment entered in plaintiff's favor.

Plaintiff is a nonprofit California corporation, engaged in furnishing irrigating and drainage services to land owned by its farmer shareholders. It owns no land or water rights of its own but instead maintains its pumping stations, canals and coordinating irrigating and drainage facilities on the property of its shareholders, from whom it has received grants of easements in perpetuity. Although plaintiff's articles of incorporation also permit it to furnish its services to persons other than its shareholders, it has never done so.

It thus appears that plaintiff is not a mere water company supplying water to the public for general purposes but that it is an "irrigation company," engaged in performing irrigating and drainage services solely for its farmer stockholders and operating solely upon the farms of said farmer stockholders. In other words, the only services which it is performing are services in line with its purposes stated in its articles of incorporation "of constructing, operating and maintaining ditches for the irrigation of the lands of the stockholders" and "for the construction, operation and maintenance of ditches for the drainage of lands owned by the stockholders." Its agreement made with each individual stockholder, which agreement is to "run with the land," provides for the prorating of plaintiff's costs of operation on an acreage basis with the amount of water limited to the irrigation needs of the farm of the particular stockholder as such farm is described in the agreement. The trial court therefore found that "plaintiff's only activity has been to furnish irrigation water and drainage service to the farms of its stockholders on a non-profit basis."

Plaintiff's services follow a definite pattern. It pumps

water from the Middle River of the San Joaquin River adjacent to the lands of its shareholders and distributes this water to its shareholders through its canals and control gates. At the request of the individual farmer shareholder, plaintiff's ditch tenders release water through the distribution canals for the farmer's irrigation needs. Likewise, when necessary, seepage and other excess ground waters are drained into feeder or lateral ditches and thence into plaintiff's drainage canals, from where the waters are pumped into a stream known as the Burns cutoff and returned to the San Joaquin River. · Plaintiff has installed a large number of electrically operated pumps and has built many miles of canals throughout the lands of its shareholders for the effective performance of both its irrigating and drainage services.

Plaintiff's employees maintain and operate all its facilities. Their services include the cleaning, servicing and repairing of plaintiff's irrigation canals as well as its drainage canals. They clean the ditches, ditch the banks, cut willows bordering the ditches, and do other similar general maintenance work. Their work is confined in the main to plaintiff's operating facilities, and they ordinarily are neither required to go, nor do they go, on lands outside the area of plaintiff's easements. Each farmer digs his own irrigation furrows. When a farmer needs water, he notifies the superintendent of the land division within which his land is located; and the superintendent, in turn, orders the release from the central ditches of a sheet of water which flows through the farmer's land. The farmer takes such water as he may need by controlling the flow of water from the central ditches into his irrigation furrows. The flow of water from plaintiff's control gates, however, is regulated by plaintiff. There is some supply to the shareholders' lands of subirrigation water from plaintiff's main canals and from its lateral and sublateral canals.

"Agricultural labor" is excluded in express terms from the operation of the Unemployment Insurance Act. (Unemp. Ins. Code, § 625, formerly § 7, subd. (a), of the Unemp. Ins. Act, Stats. 1935, p. 1226.) The administrative agency created by the act, under its power to adopt rules and regulations, promulgated a rule refining the term "agricultural labor" as including services performed on a farm in connection with the cultivation of the soil and the raising of crops, including the "irrigating" which "may be necessary and incident thereto." (Cal. Admin. Code, tit. 22, § 43; see *Stivers* v. *Department of Employment,* 42 Cal.2d 486, 489 [267 P.2d 792].) Substan-

tially, these same provisions were applicable during the tax period here involved. In 1951, the rule so promulgated and as amended was made subject of statute. (Stats. 1951, ch. 1758, § 1, p. 4185.) It was later codified as section 626 of the Unemployment Insurance Code. The question to be determined is whether the trial court properly classified the services of plaintiff's employees as "agricultural labor" within the meaning of the statutory exemption.

The activities of its employees, as plaintiff claims, are performed as a necessary incident to the growing of the crops and the preparation of the soil for such growth by drainage. The labor employed in such activities is as essentially "agricultural labor" as is labor employed in the activity of plowing the soil and planting the crops. This fundamental proposition was recognized in *Irvine Co.* v. *California Emp. Com.*, 27 Cal. 2d 570 [165 P.2d 908]. There similar services of the employees of the owner of a farm were held to constitute an essential factor in the efficient cultivation of the land and crops thereon so as to come within the statutory exemption of "agricultural labor."

The parties have not cited nor has independent research disclosed any California case covering labor engaged in irrigating or drainage activities where the employees were employed by a third person rather than by the farmer. However, persuasive authority in support of plaintiff's position is found in *Big Wood Canal Co.* v. *Unemployment Comp. Div. of the Industrial Acc. Board*, 61 Idaho 247 [100 P.2d 49]. There the claimant for a refund was a canal company organized and operated as a mutual nonprofit corporation. Its only function was to maintain and operate a system for the distribution of water for domestic and irrigation purposes to its members, who were assessed pro rata for the expense of such service. The Supreme Court of Idaho held that the employees of the canal company were performing "agricultural labor" and therefore were within the statutory exemption of that state. In so deciding, that court stated at page 50: "Irrigating the land is as much 'agricultural labor' as is the plowing, grading, and cultivating the land. . . ." (See also *Big Wood Canal Co.* v. *Unemployment Comp. Div. of the Industrial Acc. Board*, 63 Idaho 785 [126 P.2d 15].) In passing, it should be noted that in the Big Wood Canal Company case some of the services were performed on reservoirs and connecting canals many miles distant from the farms being irrigated. The court there relied upon the definition by

Congress of "agricultural labor" as including labor "in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes." (100 P.2d 49, 51.) It is unnecessary here, however, to consider the broader question of the classification of labor employed for such purposes at places other than on the farms, for here all the labor is performed on the farms of plaintiff's shareholders.

Defendants seek to apply principles of property law in segregating plaintiff's easements from the farm lands of plaintiff's shareholders and so conclude that plaintiff's services are not performed "on a farm" as required by the former administrative rule defining "agricultural labor," which rule is now embodied in section 626 of the Unemployment Insurance Code. But this tenuous distinction cannot be deemed controlling. While plaintiff's irrigating and drainage facilities are constructed on easements, such easements are merely rights of way across the farms of the shareholders, granted for the purpose of the irrigation and drainage of those farms. The fees underlying the easements and the lands surrounding the easements are farm lands owned by the farmers whom plaintiff serves. In tending the ditches and maintaining the necessary irrigation and drainage systems for the farm lands, plaintiff's employees are doing work which is essentially agricultural in nature, as it is a necessary incident of the cultivation of the land and crops thereon. Though technically working on the easements overlying farm lands, plaintiff's employees are working on the farms within the meaning of the applicable administrative regulations.

Nor does it matter that the labor here involved is done by employees of plaintiff, a corporate entity as distinguished from its farmer members. Services which are essentially agricultural under all circumstances because they are performed "on a farm, in connection with the cultivation of the soil, . . . constitute 'agricultural labor' regardless of who may be the employer of the person performing such services." (*California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546, 552-553 [165 P.2d 917].) In classifying such labor employed in services performed on the farm as a necessary incident to the cultivation of the land and the crops up to and including the harvest, it is the nature of the work performed and its locale, not the status of the employer as a farmer, which determine that the labor so employed is within the meaning of the "agricultural labor" exemption. (*Latimer* v.

*United States,* 52 F.Supp. 228; *Stuart* v. *Kleck,* 129 F.2d 400; *Chester C. Fosgate Co.* v. *United States,* 125 F.2d 775.)

■ There are other types of services, however, which are not essentially agricultural under all circumstances. These consist of post-harvest services rather than pre-harvest services "in connection with the cultivation of the soil" or the crops. Such post-harvest services may or may not be performed "on a farm" and may or may not be performed by employees of the farmer. In classifying the labor engaged in the post-harvest services such as in hay baling (*Dias* v. *California Emp. Stab. Com.,* 113 Cal.App.2d 374 [248 P.2d 427]; *Enos* v. *California Emp. Stab. Com.,* 101 Cal.App.2d 606 [225 P.2d 641]; *People* v. *Giesbrecht,* 90 Cal.App.2d 569 [203 P.2d 101]; *California Emp. Com.* v. *Rose,* 67 Cal.App.2d 864 [155 P.2d 702]), in packing-houses (*Stivers* v. *Department of Employment, supra,* 42 Cal.2d 486), or in warehouses (*California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892]), it has been heretofore held that it is the "nature of the work, modified by the custom of doing it," which determines whether the labor so employed is to be classified as "agricultural or industrial." (*California Emp. Com.* v. *Kovacevich, supra,* 27 Cal.2d 546, 560.)

Thus, under the cited authorities dealing with such post-harvest activities, if the employees were employed by the farmer himself rather than by a third person, and if their work was done as an incident of the employer's own farming operation, their labor was generally classified as "agricultural labor." But if the employees were employed by a third person conducting a commercial operation in such post-harvest activities, the labor of the employee was not classified as "agricultural labor." ■ It is true that the recent amendments to the Unemployment Insurance Code have expanded the meaning of "agricultural labor" to include some post-harvest activities not theretofore held to fall within the exemption. (*Unempl. Ins. Code,* §§ 626-627, Stats. 1953, ch. 728 § 1, p. 1992, amended by Stats. 1955, ch. 608, § 2, p. 1100; § 628.5, Stats. 1953, ch. 308, p. 1473, repealed by Stats. 1955, ch. 608, § 1, p. 1100.) There is nothing, however, in these amendments which would indicate that labor performed on the farm, as a necessary incident to the cultivation of the lands and crops up to and including the harvest, should not continue to be classified as essentially agricultural regardless of who may be the employer of the persons performing such labor. It should be noted that the above cited amendments,

enacted since the expiration of the assessment period here in question, specifically exempt as "agricultural labor" persons engaged in pre-harvest "services performed on a farm in the employ of any person"; and that this particular portion of the statutory amendments substantially adopted the rules which had previously been embodied in administrative regulations. (See *California Emp. Com.* v. *Kovacevich, supra,* 27 Cal.2d 546, 550-553; *Stivers* v. *Department of Employment, supra,* 42 Cal.2d 486, 489.)

It therefore is of no avail to defendants to argue that while plaintiff, a nonprofit corporation, has never performed services for persons other than its farmer members, its articles of incorporation permit it to do so and thereby its business would have a "commercial aspect." (*Stivers* v. *Department of Employment, supra,* 42 Cal.2d 486, 490.) Such factor cannot change the nature of essentially agricultural activities here, which are performed on the farm and as a necessary incident to the cultivation of the lands, as contrasted with a post-harvest activity such as the packing-house enterprise involved in the Stivers case. (*Ibid.,* p. 492.)

Defendants seek to isolate plaintiff's employees from the overall activity in which they play a significant part, and argue that they are merely skilled laborers engaged in the repair, maintenance, and operation of plaintiff's pumps, canals, ditches, and allied facilities. However, it is not the particular trade or skill of plaintiff's employees that controls, but rather it is the work that they are doing and the circumstances under which they are doing it that determine whether it is exempt employment. Here the services in question, performed on farm lands as a necessary incident to the cultivation of the agricultural land and the crops produced thereon, must be classed as "agricultural labor," though somewhat similar services might not be so classed if performed under different circumstances. (*Irvine Co.* v. *California Emp. Com., supra,* 27 Cal.2d 570, 582.)

The judgment is affirmed.

Shenk, J., Carter, J., and Schauer, J., concurred.

McCOMB, J.—I dissent, for the reasons stated by Mr. Presiding Justice Van Dyke in the opinion prepared by him for the District Court of Appeal in *Woods Irr. Co.* v. *Department of Employment,* (Cal.App.) 316 P.2d 1003.

Gibson, C. J., and Traynor, J., concurred.