[Civ. No. 12395. Second Dist., Div. One.—June 17, 1941.]

FANNIE S. PARK, Respondent, v. UNION MANUFAC-
TURING COMPANY (a Copartnership) et al., Defend-
ants; M. HARRIS, Appellant.

Lasher B. Gallagher for Appellant.

Jas. D. Randles for Respondent.

YORK, P. J.—On February 18, 1936, and for a long time
prior thereto, respondent Fannie S. Park was employed as a
garment worker by the Union Manufacturing Company, a
copartnership composed of appellant M. Harris and his wife,
Anna Harris. The business of said company was conducted
in a seven story building owned by appellant and his said
wife. On the date mentioned, while acting within the course
of her employment with said copartnership, respondent sus-

tained injuries when an elevator in said building dropped from the fifth to the first floor therein.

Prior thereto, appellant had procured a policy of workmen's compensation insurance for the benefit of his employees in which the employer was designated as "M. Harris dba Union Manufacturing Company."

Subsequent to the accident, respondent filed her application for compensation with the Industrial Accident Commission, in which Union Manufacturing Company was named as employer, and Pacific Employers Insurance Company was named the insurance carrier. In that proceeding an award was made in favor of respondent employee, and all parties were dismissed except the insurance carrier, in accordance with the provisions of the Workmen's Compensation Act (now embodied in the Labor Code).

Thereafter, on February 16, 1937, respondent initiated the instant action for damages on account of the injuries sustained by her in the accident, above referred to, against Union Manufacturing Company, a copartnership composed of M. Harris and Mrs. M. Harris, as well as against M. Harris and Mrs. M. Harris, individually, and also against Kurt Kunich, who was operating the elevator at the time the accident occurred.

At the beginning of the trial, on motion of respondent, all defendants were dismissed with the exception of M. Harris. At the conclusion of the trial, judgment was rendered against M. Harris in favor of respondent employee for $2,500 damages and costs, the trial court having found, among other things, as follows:

"That the defendant, M. Harris, and his wife, Anna Harris, were copartners in the carrying on of a certain business in the M. Harris Building, under the fictitious firm name and style of Union Manufacturing Company.

"III. The Court further finds the defendant, M. Harris, was the owner of the building located at 110 West 11th Street, Los Angeles, California, subject only to whatever community interest Anna Harris might have had in said building, by reason of the fact that she was the wife of the defendant, M. Harris; and the Court finds that it is not true that, at all times mentioned in Plaintiff's Second Amended Complaint, the plaintiff herein was the servant or employee of this defendant, M. Harris, and the said Anna Harris,

his wife, but, on the contrary, this plaintiff was the employee of the Union Manufacturing Company, a copartnership, possessing a separate and distinct entity from that of M. Harris, the defendant herein; and the Court finds that it is not true that plaintiff's sole remedy is, or was, a proceeding before the Industrial Accident Commission of the State of California, pursuant to the provisions of section 6 of the Workmen's Compensation Insurance and Safety Laws of the State of California (now section 3601 of the Labor Code).

. . . . . . . . . . . . . .

"Finally, the Court finds that the defendant, M. Harris, was the owner and operator of the M. Harris Building; that he was not the employer of plaintiff on February 18, 1936, and that the Union Manufacturing Company, by whom plaintiff was employed at the time of the injury herein complained of, to-wit, on the 18th day of February, 1936, was a separate and distinct entity, and was the employer, as such, on the 18th day of February, 1936, of the plaintiff herein."

This appeal is prosecuted upon the grounds, (1) the evidence is insufficient to sustain certain of the findings; (2) the findings of fact do not support the conclusions of law or the judgment; (3) the trial court had no jurisdiction of the subject of the action and its judgment is a nullity.

Appellant states that the appeal is "predicated upon the contention of M. Harris that any person who is liable for the payment of workmen's compensation cannot be sued at law for damages by any person whose injury arises out of and in the course of his or her employment." In this connection, he argues that since section 26 of the Workmen's Compensation Act provides in part that "the claim of an employee for compensation shall not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer" (now embodied in section 3852 of the Labor Code); and since section 6 of the said Act (now section 3601 of the Labor Code) provides that the liability for compensation is the exclusive remedy so far as the employer is concerned, "the decisive question here is whether M. Harris as one of the partners in the copartnership doing business under the firm name and style of Union Manufacturing Company was an employer of the plaintiff and could have been held liable for compensation."

Respondent urges that "employer" as used in said act "should be strictly construed to include only those who, by the statute itself, are expressly described as employers, and should not include those engaged in activities not connected with the employment."

In order to answer the questions thus presented, it should first be determined whether the Union Manufacturing Company, a copartnership composed of M. Harris and Anna Harris, is an entity separate and distinct from M. Harris, as owner of the building in which the accident occurred.

Appellant, when called as a witness under section 2055 of the Code of Civil Procedure, testified that he was the owner of the seven story building, commonly known as the Harris Building, which was occupied by the Union Manufacturing Company except for the ground floor and three rooms on the third floor; that the Union Manufacturing Company in February of 1936 paid $1800 per month rental to the M. Harris Building; that this rental was paid directly to him, said appellant. Later in the trial, said witness was asked by his attorney to explain to the court the manner or process by which payment of said rentals was made, whereupon said witness stated: "When I made a loan on the building, the company demanded a statement of how much the building is bringing in, and for that purpose we established the value of the rentals and how much that building is bringing in so I could make the loan, and not for any other reason. In fact, the lot that I purchased was purchased with money from the Union Manufacturing Company." He was then asked to explain what connection he had with the Union Manufacturing Company, to which he replied: "Well, the Union Manufacturing Company was in business for 15 years, and we needed larger quarters, and I took the money from the Union Manufacturing Company and purchased a lot; then I borrowed money for the Union Manufacturing Company to put up the building. As a matter of record, we have to keep books to know how much that building is bringing in and how much the business is bringing in, but it is being done by the same bookkeeper, by the same management." He also testified that no one except himself and his wife had any interest in the Union Manufacturing Company, and that the M. Harris Building stood in his name. Two policies of insurance were introduced in evidence, in one of which the

named insured appears as "M. Harris, doing business as M. Harris Building"; and in the other as "M. Harris dba Union Manufacturing Company."

A search of authoritative sources upon the subject of the entity theory of partnerships discloses the following:

"A partnership is not ordinarily regarded as strictly a legal entity distinct from the individuals composing it, and having an independent existence, nor as a person, either natural or artificial, nor as a being, or a legal being. However, there is some authority to the contrary, holding broadly that a partnership is an entity separate and apart from its members, or that it is a legal but not a social entity, and it has even been said that it is recognized in law as a person, or at least as a quasi person. Further, whether or not a partnership is to be regarded as a distinct entity for all purposes, the courts frequently have so regarded it with reference to particular rights and obligations, particularly courts of equity, and there is a general tendency at this day to complete the recognition of a partnership as a body of itself with its own means appointed to its own debts. So the entity of the partnership as such has frequently been recognized with reference to its ownership of property, the taxation of its property, its contracts with third persons, the rights of its creditors, including rights under insolvency and bankruptcy laws, the exemption of its property from execution for the debt of the partnership or of individual partners, and its liability for tort, although it cannot, as such, be guilty of a crime." (47 Cor. Jur. 747, sec. 172.)

"The theory that a partnership is a legal entity distinct from and independent of the persons composing it has been repeatedly affirmed. In the Roman law the partnership was known as 'societas', and in those jurisdictions where the Roman law is the basis of the jurisprudence, the entity of the partnership is frankly recognized, and actions are even allowed between the partner and the partnership. It has been said that the notion that the firm is an entity distinct from its members has grown in popularity, and that the notion has been confirmed by recent speculations as to the nature of corporations and the oneness of any somewhat permanently combined group without the aid of law. Furthermore, the current authorities construing and applying the

bankruptcy act of 1898 agree that, in contemplation of that statute, a partnership is a distinct separate entity from the individual partners who compose it, and that a proceeding in bankruptcy may be prosecuted against the partnership, and it may be adjudicated a bankrupt without any proceeding prosecuted against the individual members of the partnership and without their being adjudicated bankrupts individually, and similarly that the individual partners may be adjudicated without involving the partnership.  On the other hand it has been asserted that the common law does not recognize a partnership as an entity, that a partnership should not be so considered, and that it is to be regretted that decisions on the marshaling of assets under the present bankruptcy law have led to a resurrection of the term.  *Amid this conflict of authority the most approved opinion appears to be that which recognizes that a partnership is not an entity like a corporation, and that it is not a legal entity,* having, as such, a domicil or residence separate and distinct from that of the individuals who constitute it.  Although a partnership is not a person, it may, as a matter of fiction, be treated as a quasi person or entity for certain purposes such as the keeping of partnership accounts and in marshaling assets.  In common law jurisdictions this entity for such purposes may be recognized, at least in courts of equity; and it must be conceded that in some jurisdictions the law recognizes a partnership as a person distinct from the individual members of the firm, for it has been held that partners are not directly liable on a debt of the partnership, but that their liability arises out of their connection with the firm, and that it is only traceable through the firm and must be established by a judgment against the firm.''   (20 R. C. L. 804, sec. 6.)   (Emphasis added.)

''In most respects a partnership is but a relation, with no legal being as distinct from the members who comprise it.  It is not a person, either natural or artificial.  Thus a partnership, as such, cannot be guilty of crime, but the guilt attaches to the delinquent member or members.  But *for some purposes, a partnership is regarded as an entity.*  One partner may verify an affidavit in the firm name, though a statute requires 'all partners' to make the affidavit.  And for the purposes of section 388 of the Code of Civil Procedure allowing associates in business under a common name

to be sued by it and their joint property bound by the judgment, a partnership is regarded as a legal entity, distinct from its members, against which judgment may be entered. This is true though the firm has in fact been dissolved after incurring the obligations sued on, and before commencement of the suit. Again, for the purpose of filing an insolvency petition, a partnership has been regarded as an entity; and if it did business in the state and one of its members resided therein, the firm was considered to be a resident within the Insolvency Law, though one member resided abroad." (20 Cal. Jur. 680, sec. 3.) (Emphasis added.)

"Courts of jurisdictions denying the existence of a firm entity distinct from its component members, ordinarily deny the separate existence of two or more firms with an identical membership, notwithstanding they may be conducting business under separate names. *But the rule has been so far relaxed as to permit recognition of separate existence under exceptional circumstances.*" (47 Cor. Jur. 750, sec. 174.) (Emphasis added.)

A recapitulation of the authorities cited in the foregoing reveals that in the States of Iowa, Louisiana, Oklahoma, Pennsylvania, South Carolina, Tennessee and Vermont, a copartnership is regarded as a separate entity, distinct from the individuals of which it is comprised; and that the courts of New York, Minnesota, Mississippi and Texas do not recognize a copartnership as an entity apart from exceptional situations.

In this latter category is the holding in *Fidelity Phoenix Fire Ins. Co. v. Howard*, (1938) 182 Miss. 546 [181 So. 846], to the effect that a partnership with identical partners under one partnership name is the same partnership when conducting some other portions of its business under another name, and the separation of bookkeeping and of all operations and details thereof is immaterial, since ownership and ultimate control are still in the partners who compose the firm.

That California follows the latter rule, i. e., non-recognition of the entity theory of partnerships, is evidenced by the opinion in *Reed* v. *Industrial Acc. Com.*, 10 Cal. (2d) 191 [73 Pac. (2d) 1212, 114 A. L. R. 720], in which case a policy of workmen's compensation insurance issued to an employer who subsequently entered into a partnership was

held to cover an injury to an employee of the partnership, the court holding that the partnership was not a distinct entity apart from the members thereof, that an employee of the partnership was an employee of each of the partners; that no individual partner could escape liability on the ground that the partnership only and not the individuals composing it could be held liable, and that since the partner who procured the insurance was liable for the injury to the employee of the partnership, the insurer was liable on its policy.

Since it has not been shown to the satisfaction of this court that the circumstances present herein are exceptional, there appears to be no good reason for a deviation from the rule announced in the Reed case, *supra.* Consequently, appellant's contention, that the evidence is insufficient to sustain the finding of the trial court to the effect that the Union Manufacturing Company possessed a separate and distinct entity from that of M. Harris, must be sustained.

For the reasons stated, the judgment appealed from is reversed.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 14, 1941.