[L. A. No. 22811.   In Bank.   Mar. 12, 1954.]

MORGAN A. STIVERS et al., Appellants, v. DEPART-MENT OF EMPLOYMENT et al., Respondents.

Ivan G. McDaniel and Kenneth N. Dellamater for Appellants.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, for Respondents.

SPENCE, J.—Plaintiffs brought this action to recover certain unemployment insurance contributions assessed and paid under protest pursuant to the Unemployment Insurance Act. (Stats. 1935, p. 1226, as amended; 3 Deering's Gen. Laws, Act 8780d.) The assessments were for the period January 1, 1944, through September 30, 1947, and amounted to $5,348.20. Plaintiffs pursued all administrative proceedings prerequisite to the institution of this action. Their claim of refund is predicated upon the contention that their packing-

house employees were engaged in exempt "agricultural labor" and not in commercial activities, which latter activities are not exempted by the act. The court sustained defendants' demurrer without leave to amend, and from the ensuing judgment plaintiffs appeal. The record and applicable legal principles affecting the construction of the act support the propriety of the assailed judgment.

It appears from the complaint that four of the Stivers brothers—Morgan A., Glenn, Howard, and Archie*—were members of a partnership which owned, among other properties, 357 acres of citrus groves. Morgan A. Stivers was the managing and operating partner of all properties of the "four-way partnership." A fifth brother, Raymond K. Stivers, owned separately an additional 70 acres of citrus groves. He and the four-way partnership formed a packing-house partnership, known as the Stivers Packing Company. During the tax period involved the packing company owned and operated a packing-house, under the management of Raymond K. Stivers. All the fruit from the Stivers' groves— the combined 427 acres—was packed in this packing-house and constituted 80 per cent of the entire amount of products handled; the remaining 20 per cent of the total fruit packed came from the groves of others. Raymond K. Stivers had a one-third interest in the Stivers Packing Company, and the four-way partnership had a two-thirds interest. All the cost of operating the Stivers' groves was paid by the packing company. These groves were charged with their proportionate expense on the following basis: a credit was allowed for all receipts from the respective fruit sold, against which was made a charge per box for packing, plus an additional charge for the particular operation and maintenance cost, and the balance then accrued in favor of Raymond K. Stivers or the four-way partnership according to the grove accounting. The packing-house partnership did not operate, maintain or manage any "non-Stivers" citrus groves. It is alleged in the complaint that "the primary and sole purpose of said packinghouse partnership was to produce, harvest, pick, sell and ship citrus fruits" from the Stivers' groves; but the general allegation that this was the "sole" purpose must fall before the specific, contradictory allegation that "not more than 20% of the total fruit packed" came from the groves of others. The labor here in question involves only

---

*Now deceased, and his son, J. B. Stivers, as executor, joins as a plaintiff.

the services rendered by the employees of the packing-house partnership working in the packing-house.

Plaintiffs' liability for contributions on the wages paid the packing-house employees depends on whether or not such employees may be classified as "agricultural labor." ▮ The Unemployment Insurance Act excludes, without definition, "agricultural labor" from the term "employment" within its coverage provisions. The necessary definition for administrative purposes has been supplied by rule of the Department of Employment. (Cal. Admin. Code, tit. 22, § 43,[1] amending rule 7.1 following its interpretation in *California Emp. Com.* v. *Kovacevich*, 27 Cal.2d 546, 551-553 [165 P.2d 917].) It thus appears that packing-house labor, in order to be classed as agricultural, must be "services performed . . . in the employ of the owner or tenant of a farm on which the materials in their raw or natural state were produced" and "carried on as an incident to ordinary farming operations as distinguished from . . . commercial operations."

Defendants properly rely upon the rationale of *California Emp. Com.* v. *Butte County Rice Growers Assn.*, 25 Cal.2d 624 [154 P.2d 892], as determinative of plaintiffs' liability for contributions under the act. That case involved employees of an incorporated farmers' cooperative association operating a warehouse located near a railroad siding for the storage of rice and grain for shipment to market—services performed

---

[1] "Agricultural labor exempted from 'employment' by Section 7(a) of the Act includes all services performed:

"a. On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting of any agricultural or horticultural commodity; the raising, feeding, and management of livestock, poultry and bees; which includes among others, the spraying, pruning, fumigating, fertilizing, irrigating and heating which may be necessary and incident thereto.

"b. In the employ of the owner or tenant of a farm on which the materials in their raw or natural state were produced, in connection with the drying, processing, packing, packaging, transporting, and marketing of such materials.

"c. In the employ of the owner or tenant of a farm with respect to ordinary farming operations in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, if substantially all of such services are performed on a farm.

"d. The provisions of subsection (b) and (c) are not applicable with respect to the services referred to unless such services are carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations. Nor are the provisions of said subsections applicable to services performed in commercial canning or commercial freezing."

off the farm following the harvesting of the crops. The association's storage and shipping facilities were available not only to members but also to others upon payment of a nominal application fee, and under the terms of its state warehouse license the cooperative was obligated to serve the public in providing storage accommodations. Under such circumstances the warehouse was held to be a commercial enterprise, helpful to but separate and apart from the farming operations, and the activities of the employees were classified as commercial rather than agricultural within the concept of the act.

Plaintiffs seek to avoid the commercial aspect of their packing-house upon the premise that its principal purpose was to facilitate the marketing of the crops from the Stivers' groves. However, the test under the act is not the principal purpose of the enterprise but whether the services performed by its employees were "carried on as an incident to ordinary farming operations as distinguished from . . . commercial operations." Thus significant is the fact that the packing-house served the public to the extent of 20 per cent of its total fruit packing operations, a sizable amount attesting to its commercial character. Plaintiffs argue that this 20 per cent factor is not of controlling importance, since 80 per cent of the fruit handled in the packing-house came from Stivers' groves and such packing services in readying their own farm products for marketing constituted agricultural labor. Accordingly, they cite the act's provision for segregation of the employee's services on a percentage basis and classification of the aggregate employment by reference to how "one-half or more" of the employee's time is spent. (§ 7.1, Stats. 1945, pp. 1486, 2230[2]; Admin. Code, tit. 22, § 42(b), effective April 1, 1945.) The employer is required to keep accurate records in segregation of the exempt and non-exempt employment. (Cal. Admin. Code, tit. 22, § 42(a).[3])

___

[2] "If the services performed during one-half or more of any pay period by an employee for the person employing him constitute employment, all the services of such employee for such period shall be deemed to be employment; but if the services performed during more than one-half of any such pay period by an employee for the person employing him do not constitute employment, then none of the services of such employee for such period shall be deemed to be employment. As used in this paragraph the term 'pay period' means a period (of not more than thirty-one consecutive days) for which a payment of remuneration is ordinarily made to the employee by the person employing him."

[3] "Where employees perform services for an employer in both exempt and nonexempt employments, such employer shall maintain accurate records showing the hours worked by and the wages paid to employees in each of said employments. Such segregation must be made with

But these provisions appear to have been adopted as a reasonable method of determining whether a specific employee or group of employees, engaged part of the time in exempt work and part of the time in nonexempt work, is in taxable employment ·and entitled to the coverage provisions of the act. They do not apply in favor of an employer who conducts a single integrated operation having a definite commercial aspect, such as the packing-house in question, so as to exempt such employer from liability for contributions in any period in which the commercial phase of such single integrated operation may fall below 50 per cent of the total operation. A contrary construction would be unreasonable in view of the broad coverage intended by the act in fixing taxable employment. (*California Emp. Stab. Com.* v. *Lewis*, 68 Cal.App.2d 552, 554 [157 P.2d 38], and cases there cited.) Accordingly, the comparative percentage measure of the packing-house services rendered to the public does not remove the force of that consideration in reflecting the commercial nature of plaintiffs' packing-house enterprise.

Nor does it matter that here plaintiffs' packing-house is a partnership rather than a corporate entity as was the situation in *California Emp. Com.* v. *Butte County Rice Growers Assn.*, *supra*, 25 Cal.2d 624, so that the warehouse activities were not services performed for the owner or tenant of a farm within the concept of "agricultural labor" under the act. To this point plaintiffs maintain that, save in exceptional circumstances, a partnership under California law is not regarded as an entity distinct from the individuals composing it. (*Reed* v. *Industrial Acc. Com.*, 10 Cal.2d 191, 192-193 [73 P.2d 1212, 114 A.L.R. 720] ; *Park* v. *Union Mfg. Co.*, 45 Cal.App.2d 401, 407 [114 P.2d 373].) Accordingly, they claim that since they constituted the packing-house partnership and also owned the Stivers' groves on which the citrus fruit was produced, the packing-house employees were in effect performing services for the owners of the land. In opposition to plaintiffs' argument, defendants cite the act's express definition of an "employing unit" to mean "any individual or type of organization, including any partnership . . . corporation. . . ." (§ 8.5; Stats. 1937, p. 2053; am. without material changes by Stats. 1947, p. 2627.) Such provision, they claim, in effect declares that, for the purposes

respect to each individual employee rather than on the basis of the employer's operations as a whole and may be made on a percentage or other basis found by the Department to be reasonable."

of the act, a partnership is to be regarded as a separate entity. As a factual consideration indicating the distinct nature of the packing-house partnership, defendants point out the disproportionate ownership interests therein of the member-growers of the Stivers' fruit: the four-way Stivers' partnership owning some five-sixths of the total citrus acreage and two-thirds of the packing-house company; Raymond K. Stivers individually owning one-sixth of the citrus acreage and one-third of the packing-house company. However, it is unnecessary to do more than note here the respective contentions as to the ''separate entity'' of plaintiffs' partnership, for it is the independent factor of the ''commercial nature'' of the packing-house enterprise which we deem sufficient to establish plaintiffs' liability for the unemployment contributions in question.

Undoubtedly, services performed in a packing-house operated by and for the farmer-grower of agricultural products may constitute ''agricultural labor'' under the act provided ''such services are carried on as an incident to ordinary farming operations as distinguished from . . . commercial operations.'' But here the producers of the fruit formed a packing-house partnership which functioned not alone in their behalf in the marketing process. Rather, the packing-house also served the public to the substantial extent of 20 per cent of its total fruit packing services. As so operating for profit on a commercial scale, the packing-house became a single integrated enterprise operating much the same as any business concern, and it should not be treated any differently insofar as bearing its proportionate share of the social responsibilities flowing from the state unemployment insurance law. Consistent with a liberal construction of the act to effectuate its intended coverage (*California Emp. Com.* v. *Butte County Rice Growers Assn., supra,* 25 Cal.2d 624, 630), the commercial packing-house labor here involved was not exempt employment. Accordingly, plaintiffs' liability for unemployment contributions as here assessed cannot be avoided on the facts alleged in their complaint.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J., Dissenting.—I adopt as my dissenting opinion in this case the able and well reasoned opinion prepared by Presiding Justice Shinn, which was concurred in by Jus-

tices Wood and Vallée, when this case was before the District Court of Appeal, Second Appellate District, Division Three.

"Plaintiffs sued to recover employer's taxes paid under protest under assessments levied under section 45.11(d) of the California Unemployment Insurance Act (Deering's Gen. Laws, Act 8780(d).) The demurrer of James G. Bryant as Director of Employment and other defendants was sustained without leave to amend and plaintiffs appeal from the ensuing judgment. The assessments were for the period January 1, 1944, through September 30, 1947, and amounted to $5,348.20.' Plaintiffs pursued all necessary administrative proceedings prerequisite to court action.

"The labor for which the assessments were levied was performed in a packing house and the question is whether it was agricultural labor and hence exempt under the act. It was alleged in the complaint that plaintiffs Morgan A. Stivers, Glenn Stivers, Howard Stivers and Raymond K. Stivers were, during the period in question, members of a partnership which owns, with numerous other assets, 357 acres of citrus groves. Subsequently, Raymond K. Stivers died and J. B. Stivers, as executor of his estate, joins with the others as a plaintiff. Raymond K. Stivers owned separately an additional 70 acres of groves. All the property stood in the name of Morgan A. Stivers or of himself and his wife and he had the management of all the properties of the partnership. The same four parties owned a packing house and this was managed by Raymond K. Stivers. Eighty per cent of the products handled in the packing house came from Stivers' groves and not over 20 per cent from the groves of others. The packing house operations were conducted by a partnership consisting of the four owners of the groves, Raymond K. Stivers having a one-third interest in this partnership and the other members a two-thirds interest. All the cost of operating the groves was paid by the packing house partnership. The several groves were charged with this expense, and were credited with all the receipts from products sold, against which was a charge per box for packing, plus an additional charge for the operation and maintenance of the groves owned by Raymond K. Stivers and those owned by the owning partnership. The packing house partnership did not operate, maintain or manage any non-citrus groves; the primary and sole purpose of the packing house partnership was to produce, harvest, pick, sell and

ship citrus fruits from the Stivers' groves. It was alleged that two-thirds of the (Stivers) citrus fruits packed were produced in the groves of the owning partners and one-third in the groves owned by Raymond K. Stivers.

"Our discussion will be devoted to the following propositions: If the packing house partnership, as distinguished from its individual members, is to be regarded as a separate entity, and the employing unit of the packing house workers, or if the principal packing house operation was not merely incidental to the farming operation, the labor would not be agricultural labor under the terms of the act and the regulations of the Department of Employment, whereas, if the packing house partnership was merely an agency of the owners of the groves and the individuals who compose both partnerships were, in reality, the employers, and if the principal packing house operation was merely incidental to the farming operation, all the labor in the packing house would be regarded for unemployment tax purposes as agricultural labor and hence exempt. We are of the opinion that the latter is the case.

"Section 7(a) of the act provided that the term 'employment' does not include 'agricultural labor.' The act did not define agricultural labor. During the year 1944 and until January 1, 1945, there was in force rule 7.1 of the department defining agricultural labor and which read as set out below.[1]

"As of April 1, 1945, without material change, rule 7.1 became section 43 of title 22 of the California Administrative

---

" [1]'Agricultural Labor Defined—The term "Agricultural Labor" includes all services performed:

" '(1) By an employee on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops, the raising, feeding, management of livestock, poultry and bees; which includes among others, the spraying, pruning, fumigating, fertilizing, irrigating and heating which may be necessary and incident thereto;

" '(2) By an employee in connection with the drying, processing, packing, packaging, transporting, and marketing of materials which are produced on the farm or articles produced from such materials, providing such drying, processing, packing, packaging, transporting, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

" 'The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Nor do such services constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations.' "

Code, which was amended June 1, 1945, to read as set out below.[2]

"In *California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546 [165 P.2d 917], former rule 7.1 was interpreted to mean that packing house labor, in order to be classed as agricultural, must be performed by an employee of the owner or tenant of the farm on which the materials are produced, and the services must be carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations. With somewhat different arrangement, section 43 of title 22 of the California Administrative Code imposed the same conditions.

"Inasmuch as 80 per cent of the packing services were performed on Stivers' fruit and 20 per cent on other fruit, certain other enactments are to be considered.

"By Statutes 1939, pages 2850-2853, section 7 of the Unemployment Reserves Act (Stats. 1935, p. 1226) was amended to read as set out below.[3] The same provision is found in section

---

[2]'Agricultural labor exempted from "employment" by Section 7(a) of the Act includes all services performed:

'(a) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting of any agricultural or horticultural commodity; the raising, feeding, and management of livestock, poultry and bees, which includes among others, the spraying, pruning, fumigating, fertilizing, irrigation and heating which may be necessary and incident thereto.

'(b) In the employ of the owner or tenant of a farm on which the materials in their raw or natural state were produced, in connection with the drying, processing, packing, packaging, transporting, and marketing of such materials.

'(c) In the employ of the owner or tenant of a farm with respect to ordinary farming operations in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, if substantially all of such services are performed on a farm.

'(d) The provisions of subsections (b) and (c) are not applicable with respect to the services referred to unless such services are carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations. Nor are the provisions of said subsections applicable to services performed in commercial canning or commercial freezing.' "

[3](b) 'If the services performed during one-half or more of any pay period by an employee for the person employing him constitute employment, all the services of such employee for such period shall be deemed to be employment; but if the services performed during more than one-half of any such pay period by an employee for the person employing him do not constitute employment, then none of the services of such employee for such period shall be deemed to be employment. As used in this paragraph the term "pay period" means a period (of not more than thirty-one consecutive days) for which a payment of remuneration is ordinarily made to the employee of the person employing him.' "

7.1 of the act (Stats. 1954, pp. 1486 and 2230; 3 Deering's Gen. Laws, § 8780(d)). It also appears as section 42(b) of title 22 of the California Administrative Code, effective April 1, 1945, which contains the additional provisions set out below.[4]

"We may inquire first whether it appeared from the allegations of the complaint as a matter of law that the packing services were incidental to a commercial operation as distinguished from the farming operation. It was alleged that they were merely incidental to the latter and we think it may not be questioned that the facts pleaded would have justified a finding that this allegation was true. We can conceive of no reason to doubt that the principal purpose of the packing house operation was to facilitate the marketing of the crops from the Stivers' groves.

"Plaintiffs contend that the share of the services amounting to 20 per cent rendered to the public was likewise incidental to the farming operation. We deem it unnecessary to decide this question. Even if it be assumed that the labor performed in packing nonStivers fruit, if considered by itself, would be subject to tax, it should be deemed tax exempt under former section 7 of the act, which became section 7.1 under the 1945 amendment, for the reason that more than 50 per cent of the entire service was agricultural. It is therefore immaterial whether the 20 per cent of services on nonStivers fruit were agricultural and tax exempt, or nonagricultural and tax subject, inasmuch as the entire service was rendered to the same employer.

"Exemption from tax liability rests upon the further condition that the packing house laborers were working for the owners of the groves. We are satisfied that they were.

"Any type of organization, including a partnership, may become an employing unit (§ 9). So may a partnership be an owner or a tenant. Granting that the packing house partnership was nominally the employing unit with respect to the packing house labor, and recognizing that title to the groves was not vested in the partnership as an entity distinct from its members, we cannot fail to recognize the fact that the

---

"[4](a) 'Where employees perform services for an employer in both exempt and nonexempt employments, such employer shall maintain accurate records showing the hours worked by and the wages paid to employees in each of said employments. Such segregation must be made with respect to each individual employee rather than on the basis of the employer's operations as a whole and may be made on a percentage or other basis found by the Department to be reasonable.' "

groves belonged to the individuals who composed the packing house partnership. This fact establishes that the individuals were in a real sense the employers of the workers.

"Defendants say that the decision in *California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892], 'is viewed to be determinative of the present controversy.' We believe otherwise. The defendant was a cooperative association, incorporated as a nonprofit farmers' organization under civil code sections. It had 48 members, paying $300 each, and 23 applicants for memberships who had paid $10 each. All were entitled to the handling and marketing services. The association conducted a warehouse business in which it was obliged to receive and store products offered to it by the general public without discrimination; it also purchased and sold to its members and applicants, and might also sell to the public, merchandise commonly used in farming operations; it also maintained a public scale for the use of the public. Any profits made in its operation were distributed ratably among the regular members. Applicants for membership received nothing. The association was not the owner, tenant or operator of any farm. The court said: 'Upon this record the conclusion is inescapable that the defendant association is in essence a commercial enterprise.' It was claimed for the association that it was a mere agency through which the members and applicants processed and marketed their products. The court rejected this claim, stating (p. 636): 'Such observation is not only squarely at variance with the facts of this case—demonstrating that the defendant association in *all* its services functions as a unit *wholly independent* of the farmers comprising its membership —but is likewise contrary to the elementary legal principle that a corporation is a complete legal entity separate and apart from the individuals who own it.' It was therefore held that the operation of the various enterprises while helpful, were 'not an incident to ordinary farming operations as distinguished from . . . commercial operations,' and that the labor employed therein was not tax exempt. The features of the operations in that case which the court deemed to be controlling are absent from the present case. The factual features of the present case from which we conclude that the major part of the services here in question was incidental to a farming operation, were absent from the former case. The court in that case did not hold, as respondents contend, that any service rendered to the public would make the running of

a packing house a commercial operation. It did hold that the commercial operations of the Rice Growers Association were not incidental to a farming operation.

"Respondents contend that the Stivers partnership was an entity separate from the members thereof, just as the Rice Growers Association was an entity separate from its members. The distinctions are obvious. The principal differences are that the individuals who composed the two Stivers partnerships were the sole owners of the groves and the packing house, operated both the farming and the packing operations through their respective managers, that all the acts of their managers were the acts of the partners, and all the duties and obligations of the partnerships the duties and obligations of the individual members. Certainly it could not be contended that the groves were in an ownership distinct and separate from that of the individual partners.

"A partnership may be regarded as a legal entity for some purposes and not for others. It may in its partnership name become an employer of labor so as to effectively bind its members, but in doing so it acts on their behalf and not as a separate entity. The theory that a workman employed by a partnership is not the employee of each member of the partnership was expressly rejected in *Reed* v. *Industrial Acc. Com.*, 10 Cal.2d 191 [73 P.2d 1212, 114 A.L.R. 720]. Reed was employed by a partnership, Gordon and Mellott. Mellott became insured before he formed a partnership with Gordon. Reed was denied a compensation award against the insurer on the theory that he was an employee of the partnership, which was not insured. The award was annulled. The court held that Reed was the employee of the individuals who composed the partnership and was therefore insured. We quote from the opinion a passage which we regard as conclusive on the point: 'The underlying fallacy in respondent's argument is the assumption that the partnership is a distinct unit, separate from the members thereof. Occasional suggestions of this "entity" theory of partnership are found in statutes or decisions, but apart from exceptional situations, a partnership is not considered an entity, but an association of individuals. (See *First Nat. T. & S. Bank* v. *Industrial Acc. Com.*, 213 Cal. 322, 331 [2 P.2d 347, 78 A.L.R. 1324] ; 9 Cal.L.Rev. 119.) In consonance with this view, an employee of a partnership is an employee of each of the partners, and no individual partner may escape liability to such employee on the ground that only the partnership and

not the individuals composing it can be held. It is immaterial whether the liability of the partners in this situation is joint and several, or joint, for even in the case of joint liability, a several judgment may be had against an individual partner by proper joinder and pleading. (See *Palle* v. *Industrial Com.*, 79 Utah 47 [7 P.2d 284, 81 A.L.R. 1222]; *Merchants Nat. Bank* v. *Clark-Parker Co.*, 215 Cal. 296 [9 P.2d 826, 81 A.L.R. 778].) The result is that W. B. Mellott, a partner in the firm of Gordon & Mellott, was an employer of petitioner Reed, and was undoubtedly liable to Reed for workmen's compensation. Since W. B. Mellott procured insurance with respondent company to cover such liability, and paid the required premium therefor, the company must perform its obligation by paying the award.'

''The principle stated is supported by numerous authorities cited by the court and by many others. This entire line of authority is ignored in the brief of the respondents, although it directly supports the contention of the appellants that they, as individuals, were the real employers of the packing house workers. Respondents say that the packing house workers are as much in need of unemployment insurance as other workers, and apparently contend that this fact should influence the interpretation of the law by the courts. The same could be said of all agricultural workers and many others whose wages are tax exempt. We have only to apply the law as it is written. The argument of the respondents has an answer in the Kovacevich case (27 Cal.2d, pp. 549, 550) where it is said: 'While it is true that such legislation should be liberally construed so as to afford all the relief which the language of the act indicates that the Legislature intended to grant (*California Emp. Com.* v. *Butte County Rice Growers Assn.*, 25 Cal.2d 624, 630 [154 P.2d 892]), the interpretation should not exceed the limits of the statutory intent. . . . In view of the express statutory intent to except ''agricultural labor,'' any labor which is essentially agricultural in nature, and which cannot be otherwise regarded by reason of any change in the custom of doing it, should not be included within the operation of the act by administrative or judicial legislation under the guise of liberal interpretation.'

''The requirements that the employer of both exempt and nonexempt labor must keep the account of each employee so as to record the time spent in each type of employment in each pay period (§ 42, title 22, note 4 above) was met by the allegations of the complaint that such records were kept.

"We hold that upon proof of the facts pleaded by plaintiffs the court could properly find that plaintiffs were the employers of the packing house labor; that not less than 80 per cent of the packing house services were incidental to ordinary farming operations as distinguished from commercial operations, and hence were agricultural, and could properly conclude therefrom that all the wages paid were tax exempt."

For the foregoing reasons I would reverse the judgment and permit the defendants to answer if they be so advised.

Schauer, J., concurred.

Appellants' petition for a rehearing was denied April 7, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.