**In re CABAZON INDIAN CASINO, Debtor.**

**Rocco ZANGARI, Plaintiff-Appellant,**

v.

**CABAZON INDIAN CASINO, Defendant-Appellee.**

BAP No. CC–82–1578–GVAb.
Bankruptcy No. SB 81–03397 WH.
Adv. No. SB 82–0174–WH.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued May 19, 1983.

Decided Dec. 29, 1983.

Leonard A. Bock, Bock & Stoddard, Palm Spring, Cal., for plaintiff-appellant.

Glenn M. Feldman, Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, Washington, D.C., for defendant-appellee.

Before GEORGE, VOLINN and ABRAHAMS, Bankruptcy Judges.

## OPINION

GEORGE, Bankruptcy Judge:

Appeal has been taken in this adversary proceeding from a summary judgment entered by the trial court in favor of the defendants. Because we believe that there remains a material question of fact to be resolved in this matter, we reverse the judgment of the court below and remand for further proceedings not inconsistent with this memorandum.

## I. BACKGROUND

On or about September 25, 1980, the plaintiff, ROCCO ZANGARI ("Zangari"), entered into an agreement to manage a cardroom operated by the debtor, CABAZON INDIAN CASINO ("Casino"), on land owned by the Cabazon Band of Mission Indians, a federally-recognized tribe of Indians. Although this agreement appears to have been only between Zangari and PN Associates, Inc., a Delaware corporation, it was also signed by Arthur Welmas, Chairman of the Cabazon Band of Mission Indians.

Following some legal difficulties between the Casino and the City of Indio, California, on November 5, 1981, Zangari was discharged from his managerial position. Thereafter, on December 10, 1981, the Casino filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On January 28, 1982, Zangari filed a complaint objecting to the general discharge of the Casino and, in particular, to the discharge of any amounts owed him by the debtor under the September 25, 1980 agreement. In turn, the Casino countercomplained for damages under the Zangari-PN Associates, Inc. agreement.

On September 22, 1982, the Casino moved for summary judgment against Zangari, arguing 1) that Zangari's agreement was only with PN Associates, Inc., and 2) that, even if the September 25, 1980 agreement were also with the Casino, it was null and void under 25 U.S.C. § 81.

25 U.S.C. § 81 provides, in pertinent part, that "[n]o agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value ... in consideration of services for said Indians relative to their lands," unless the agreement complies with five specific requirements set forth in that statute. There is no question

that the September 25, 1980 agreement failed to comply with at least a portion of the requirements of this section. Therefore, the only factual issues before the court below were whether 1) the September 25, 1980 agreement bound the Casino and 2) 25 U.S.C. § 81 was applicable to this debtor.

For purposes of the defendants' motion for summary judgment, the trial court assumed, without making a factual finding to that effect, that the September 25, 1980 agreement was also between Zangari and the Casino. Despite this assumption, the trial court, nevertheless, concluded that any agreement between Zangari and the debtor would have been null and void without compliance with 25 U.S.C. § 81. Since there was no such compliance, the court held that Zangari had no standing to object to the debtor's discharge nor any debt basis for his dischargeability cause of action and it granted summary judgment for the defendants. A subsequent motion for new trial was filed and denied.

## II. ANALYSIS OF THE FACTS AND THE LAW

Inasmuch as the court below based its ruling upon the 25 U.S.C. § 81 arguments of the defendants, rather than upon the particulars of the September 25, 1980 agreement, the current state of the appellate record permits the panel to review only that issue.

In this regard, the panel is somewhat troubled that the focus of dispute in this appeal relates to an element of the 25 U.S.C. § 81 issue which, while raised implicitly by the plaintiff's complaint and the defendants' motion for summary judgment and explicitly in Zangari's motion for new trial, was apparently never addressed by the trial court in its judgment or in its ruling on the plaintiff's post-judgment motion. In its voluntary petition under Chapter II, the Casino is described as

"a co-partnership consisting of:
Arthur Welmas, President/chairman
John James, Secretary Treasurer
John Paul Nichols, Project Manager/Employee
Brenda James, Director/Vice-chairman
Charles Welmas, Director, Vice-chairman
Cabazon Bank [sic] of Missions Indians, c/o 84–245 Indio Springs Drive, Indio, California 92201:
Alvarez, Leroy
Benitez, Joseph
Benitez, Marc
Callaway, William
Giff, Amelia Callaway
James, Brenda
James, Bruce
Streeter, Linda
Welmas, Treasure
Welmas, Dillard John
Welmas, Beverly
Welmas, Floyd
Welmas, Charles
Welmas, Virginia
Benitez, Tracie
Callaway, San Juanita
Callaway, Helen Ruth
Callaway, William Jr.
Hernandez, Fernando
Welmas, Douglas Todd"

This petition was signed by John Paul Nichols, as "Project Manager". The record reflects that Mr. Nichols is a non-Indian and, therefore, ostensibly not a member of the Cabazon Band of Mission Indians. Furthermore, it would appear, from the somewhat sketchy record before us, that the debtor has tended, in its business dealings, to regard itself as an entity independent from the Cabazon Band of Mission Indians. (In this regard, it is significant that the Casino filed its own Chapter 11 petition. If it were merely one enterprise of the Cabazon Band, as its counsel argues, the filing should have been on behalf of the entire tribe.)

Although Mr. Zangari admits that he cannot expect to collect anything from tribal funds, he maintains that, since his agreement was with the Casino, as a co-partnership entity distinct from the tribe, it would not be void under 25 U.S.C. § 81. While the panel does not have before it a sufficient record to determine whether Zangari's

agreement was with the Casino or only with PN Associates, Inc., it does agree that a question of fact exists on the nature and relationship of the debtor vis-a-vis the Cabazon Band of Mission Indians.

California law has not traditionally regarded a partnership as an entity apart from its constituent members, other than in exceptional circumstances. *Reed v. Industrial Accident Commission*, 10 Cal.2d 191, 73 P.2d 1212 (1937); *Park v. Union Mfg. Co.*, 45 Cal.App.2d 401, 114 P.2d 373 (1941). There is, therefore, a significant difference, under California law, between a partnership having a tribe of Indians as one of its partners and a corporation formed by a tribe under state law. Hence, the "separate entity" reasoning of the United States Court of Appeals for the Ninth Circuit in *Inecon Agricorporation v. Tribal Farms, Inc.*, 656 F.2d 498 (9th Cir.1981), in which the court held that the agreements of a tribal corporation were not governed by 25 U.S.C. § 81, would not be directly applicable to the case at bar.

Nevertheless, current California law does permit a partnership to take title to property in its collective name, Cal.Corp.Code § 15008, and to sue and to be sued as a partnership, Cal.Civ.Pro.Code § 388. Thus, the associational nature of a partnership makes it something more, in the eyes of the law, than any one of its partners.

In particular, we observe that the rights and defenses available to individual partners are not automatically transferred to the partnership or to its other members. Thus, for example, while the bankruptcy of one partner may cause the dissolution of the partnership, it does not discharge the debts of either the partnership or the other partners.

With respect to the present appeal, a number of persons, who do not appear to fall under the protections provided by 25 U.S.C. § 81, seem to have formed a partnership with a tribe of Indians, which may enjoy those protections in the context of the present adversary proceeding. We do not believe that such a partnership or its unprotected members may derivatively enjoy the privileges of its protected partner. To hold otherwise would extend those privileges and protections beyond the persons and groups specifically contemplated and designated by Congress in the creation of 25 U.S.C. § 81.

To the extent that the debtor is a co-partnership involving persons not referred to in 25 U.S.C. § 81, we find that the lower court erred in granting summary judgment on the basis of that statute. In so ruling, we refrain from examining the potential liability of the Cabazon Band of Mission Indians for partnership debts. In this connection, we note that the appellant has admitted that he may not seek a recovery from tribal funds.

### III.  CONCLUSION

The panel finds that a material question of fact exists in this case concerning the nature of the debtor and its relationship with the Cabazon Band of Mission Indians. We, therefore, reverse the summary judgment of the lower court and remand for further proceedings on this and other relevant issues.

REVERSED and REMANDED.